**UNITED STATES DISTRICT COURT**

**EASTERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| UNITED STATE OF AMERICA,<br><br>        Plaintiff,<br><br>  v.<br><br>SAMUEL STONE,<br><br>        Defendant. | **12-cr-0072 JCC-GSA**<br><br>**ORDER GRANTING DEFENDANT'S MOTIONS TO COMPEL IN PART**<br><br>**ORDER SETTING DISCOVERY DEADLINE**<br><br>**(Docs. 34, 78 and 95)** |

### I.     Introduction

On December 7, 2012, Defendant, Samuel Stone ("Defendant"), filed a Motion to Compel Discovery.  (Doc. 34).  On January 9, 2013, Plaintiff, the United States of America (the "United States" or "government"), filed an opposition.  (Doc. 41).  Defendant filed a reply and an amended reply on January 24 and 25, 2013, respectively. (Docs. 47 and 49).  The court held a hearing on February 5 and 6, 2013, and required that the parties meet and confer and devise a plan to resolve their discovery disputes.  (Docs. 50 and 52).

At the hearing in February, Defendant identified additional areas of discovery that he would be requesting.  On April 22, 2013, Defendant filed a second Supplemental Motion for

1

Discovery, outlining those requests. (Doc. 78).  The government filed its opposition on April 29, 2013. (Doc. 80).  Defendant filed a reply on May 3, 2013.  (Doc. 82).  In addition, the parties filed a Joint Statement on April 29, 2013, addressing the motions.  (Doc. 79).

The Court held a status conference and hearing on both motions on May 9, 2013. (Doc. 83).  Jacabed Rodriguez-Cross and Elana Landau personally appeared on behalf of the United States.  Donald Knight, Alexandra Negin, and Tivon Shardl personally appeared on behalf of Defendant, the moving party.  At that hearing, the parties reported that the government produced a significant amount of discovery and it was still in the process of compiling additional documents.  The Court ordered that the parties file stipulations outlining what issues were resolved, and what issues remained in dispute by June 7, 2013.

On June 7, 2013, the parties filed the required stipulations.  (Docs. 90 and 91).  The Court adopted the stipulations on June 11, 2013.  (Docs. 92 and 93).  On June 21, 2013, Defendant filed a Motion to Compel outlining his position regarding the disputed items. (Doc. 95).  The United States filed its opposition on June 28, 2013.  (Doc. 97).  Defendant filed his reply on July 8, 2013. (Doc. 99).  The Court took the matter under submission.

In his brief filed on June 21, 2013, Defendant outlines six main areas of discovery that are still in dispute including requests relating to : 1) *Brady/Giglio* material, 2)  information regarding the non-preservation of audio/video recordings, 3)  e-mails and other communications between government officials and agencies regarding charging decisions in this case, 4)  training materials and policies outlining protocols for the preservation of evidence at the crime scene, 5) information regarding the assault of Stephen Jackson and related prosecution, and 6) materials relating to the Bureau of Prisons ("BOP") ADX facility.[1]  Upon a review of all of the above pleadings and arguments at the hearings, Defendant's motions are GRANTED IN PART AND

---

[1] ADX stands for United States Penitentiary, Administrative Maximum Facility located in Florence, Colorado.

DENIED IN PART as set forth below.

## II.    Factual Summary

On March 22, 2012, the grand jury returned an indictment charging the Defendant with Murder by a Federal Prisoner Serving a Life Sentence under 18 U.S.C. § 1118(a) and First Degree Murder under 18 U.S.C. § 1111(a).  The indictment alleged Defendant killed one of his two cell mates, Michael Anita, in his cell at the Special Housing Unit ("SHU") of the United States Penitentiary at Atwater, California on July 30, 2003.

On March 22, 2013, the United States also filed a Notice of Intent to Seek a sentence of Death pursuant to 18 U.S.C. § 3593.  The government provided notice of five statutory aggravating factors pursuant to 18 U.S.C. § 3591(a)(2) and § 3592(c) including: 1) death during the commission of another crime (murder while serving a life sentence); 2) a previous conviction for an offense for which a sentence of life or death was authorized by statute; 3) a previous conviction of other serious offenses (two second degree murders); 4) committing the offense in a heinous, cruel, and depraved manner; and 5) substantial planning and premeditation.  The government also provided notice of four non-statutory aggravating factors, pursuant to 18 U.S.C. § 35895(a)(2) including : 1) a lack of remorse; 2) future dangerousness; 3) a pattern of violent conduct; and 4) victim impact.

## III.    Discovery Standards

There are several discovery principles that are applicable in this case that are discussed in detail below.  It is with these standards in mind that the Court addresses each of the discovery disputes.

### A. Rule 16

Under Federal Rule of Criminal Procedure 16(a)(1)(E), a prosecutor must provide a criminal defendant with discovery of materials "which are within the possession, control, or

3

custody of the government and which are material to the preparation of the defendant's defense."

Fed. R. Crim. P. 16(a)(1)(E).  However, a defendant must make a prima facie showing of

materiality before he is entitled to obtain the requested discovery. *U.S. v. Santiago*, 46 F. 3d 885,

894 (9th Cir. 1995) citing *United States v. Mandel*, 914 F.2d 1215, 1219 (9th Cir.1990). "Neither a

general description of the information sought nor conclusory allegations of materiality suffice; a

defendant must present facts which would tend to show that the Government is in possession of

information helpful to the defense." *Id*.; *See also*, *U.S. v. Stever*, 603 F. 3d 747, 752 (9th Cir.

2010) (quoting *United States v. Santiago*, 46 F. 3d at 893)).  Further, to show materiality, the

evidence in question must enable the defendant to substantially alter the quantum of proof in his

favor. *U.S. v. Marshall*, 532 F. 2d 1279, 1285 (9th Cir. 1976), or be "relevant to the development

of a possible defense."  *U.S. v. Mandel*, 914 F. 2d at 1219.

Moreover, Rule 16(a)(1)(E) only applies where the documents are within the federal

government's actual possession, custody, or control. See *United States v. Dominguez–Villa*, 954

F.2d 562, 566 (9th Cir.1992). A document is within the possession of the government, if the

prosecutor has knowledge of it and access to it.  A "prosecutor will be deemed to have knowledge

of and access to anything in the possession, custody or control of any federal agency participating

in the same investigation of the defendant." *United States v. Bryan*, 868 F.2d 1032, 1036 (9th

Cir.1989).  Federal prosecutors, through the Department of Justice, have "possession, custody or

control" over BOP files.  *U.S. v. Santiago*, 46 F. 3d at 895.  Where the government has shown

that complying with a criminal defendant's discovery request under Rule 16 would be unduly

burdensome, "it is incumbent on the district court to consider the government interests asserted in

light of the materiality shown." *Mandel*, 914 F. 2d at 1219 (citing *United States v. Cadet*, 727 F.

2d 1453, 1468 (9th Cir. 1984)).

///

4

### A. *Brady*

In addition to the government's discovery obligations under Rule 16(a), the government must also honor the defendant's constitutional due process rights under *Brady v. Maryland*. 373 U.S. 83, 86 S. Ct. 1194 (1963).  In *Brady v. Maryland*, the United States Supreme Court held that "suppression by the prosecution of evidence favorable to the accused upon request violates due process where the evidence is material to either guilt or punishment, irrespective of the good faith or bad faith of the prosecution." *Brady*, 373 U.S. at 87, 83 S.Ct. at 1194.  *Brady* requires that the prosecutor turn over exculpatory evidence, whether substantive or for impeachment purposes, when such evidence is "material" to the defense and is in the government's possession. *United States v. Bagley*, 473 U.S. 667,678, 105 S.Ct.3375, 3381 (1985).

The defendant's right to the disclosure of favorable evidence, however, does not "create a broad, constitutionally required right of discovery." *United States v. Bagley*, 473 U.S. at 675 n. 7, 105 S.Ct. at 3380 n. 7; *U.S. v. Caro*, 597 F.3d 608, 619 (4th Cir. 2010) (citing *Weatherford v. Bursey*, 429 U.S. 545, 559, 97 S. Ct. 837 (1977)).  A "defendant's right to discover exculpatory evidence does not include the unsupervised right to search through the [government's] files," *Pennsylvania v. Ritchie*, 480 U.S. 39, 59, 107 S.Ct. 989, 1002 (1987), nor does the right require the prosecution to deliver its entire file to the defense. *See*, *United States v. Agurs*, 427 U.S. 97,109, 96 S.Ct. 2392, 2400 (1976).  Similarly, the Constitution "does not grant criminal defendants the right to embark on a 'broad or blind fishing expedition among documents possessed by the Government.'" *United States v. Mayes*, 917 F. 2d 457, 461 (10th Cir. 1990) (quoting *Jencks v. United States*, 353 U.S. 657, 667, 77 S Ct. 1007 (1957)).

Rather, *Brady* obligates the government to disclose only favorable evidence that is "material."  The "touchstone of materiality is a 'reasonable probability' of a different result." *Kyles v. Whitley*, 514 U.S. 419, 434, 115 S.Ct. 1555, 1566 (1995); *United States v. Jernigan*, 492

5

F.3d 1050, 1053 (9th Cir. 2007).  A "reasonable probability" is a probability sufficient to undermine confidence in the outcome.  *United States v. Bagley*, 473 U.S. at 682,105 S.Ct. at 3385; *U.S. v. Price*, 566 F.3d 900, 912 (9th Cir. 2009).

### B.   General Standards Applicable to Death Penalty Cases

Because of its severity and finality, capital punishment is qualitatively different from any other form of punishment.  *Gardner v. Florida*, 430 U.S. 349, 357,97 S. Ct. 1197, 1204 (1977); *Woodson v. North Carolina*, 428 U.S. 280, 305, 96 S. Ct. 2978, 2991 (1976).  Accordingly, heightened standards apply.  *Id.*; *Caldwell v. Mississippi*, 472 U.S. 320, 323, 105 S.Ct. 2633 (1985) (noting heightened need for reliability in death penalty cases).

In *Lockett v. Ohio*, 438 U.S. 586, 98 S.Ct. 2954 (1978), the Supreme Court held that the Eighth and the Fourteenth Amendments require that a sentencer in a capital case be given a full opportunity to consider, as a mitigating factor, "any aspect of a defendant's character or record," in addition to "any of the circumstances of the offense that the defendant proffers as a basis for a sentence less than death."  *Id.*, at 604, 98, S.Ct. 2954 (plurality opinion).  *Lockett* emphasized the need to consider the uniqueness of the individual in a death penalty case.  *Id.* at 605, 98 S.Ct. 2954. Indeed, justice requires that the circumstances of the offense, taken together with the character and propensities of the offender, should be taken into account as part of deciding whether the defendant is to live or die. *Eddings v. Oklahoma*, 455 U.S. 104, 112, 102 S.Ct. 869, 875 (1982) (citing *Pennsylvania ex rel. Sullivan v. Ashe*, 302 U.S. 51, 55, 58 S.Ct. 59, 60 (1937)).

Similarly, 18 US.C. § 3593 provides that "[a]t the sentencing hearing, information may be presented as to any matter relevant to the sentence, including any mitigating or aggravating factor permitted or required to be considered under section 3592."  18 U.S.C. § 3593(c).  The fact-finder at the penalty phase must also consider "[o]ther factors in the defendant's background, record, or character or any other circumstance of the offense that mitigate against imposition of the death

sentence." *Id*. § 3592(a)(8).  Nonetheless, a court may still "exclude, as irrelevant, evidence not bearing on the defendant's character, prior record, or the circumstances of his offense." *Lockett v. Ohio*, 438 U.S. at 605 n.12, 98 S.Ct. at 2965 n.12

### C. The Timing of Brady Disclosures and Giglio Material

Impeachment evidence falls under *Brady* when the reliability of a given witness may be determinative of a defendant's guilt or innocence.  *Giglio v. United States*, 405 U.S. 150, 154, 92 S. Ct. 763, 766 (1972).  *Giglio* obligates the prosecution to disclose evidence affecting credibility." *Id*.  Generally, *Giglio* material, need not be disclosed prior to the witness testifying. *U.S. v. Rinn*, 586 F. 2d 113, 119 (9th Cir. 1978); *United States v. Higgs*, 713 F.2d 39, 43 (3rd Cir. 1983); *See also United States v. Gonzalez–Montoya*, 161 F.3d 643, 649–50 (10th Cir. 1998) (explaining that delayed disclosure of impeachment evidence did not violate *Brady/Giglio* because defendant received evidence in time to use it to impeach witness).

Similarly, *Brady* does not necessarily require that the prosecution turn over exculpatory material before trial; however, disclosure must be made at a time when it would be of value to the accused.  *U.S. v. Gordon*, 844 F. 2d 1397 (9th Cir. 1988) (quoting *United States v. Davenport*, 753 F. 2d 1460, 1462 (9th Cir. 1985)).  The Ninth Circuit has also recently held that "information in possession of the prosecutor and his investigation officers that is helpful to the defendant, including evidence that might tend to impeach a government witness, must be disclosed to the defense prior to trial." *U.S. v. Price*, 566 F. 3d at 903.

Here, since the Defendant is subject to a possible sentence of death, his case warrants especially careful treatment.  Indeed, several district courts have ordered accelerated discovery of *Brady* information in capital cases to aid in the defense's presentation of its case.  *See*, *United States v. Ortiz*, 2012 WL 5379512 at * 4 (N.D. Cal. Oct. 31, 2012); *United States v. Delatorre*, 438 F. Supp. 2d 892, 900 (N.D. Ill. 2006); *United States v. Perez*, 222 F. Supp. 2d 164, 170-171

(D. Conn. 2002).  Moreover, the Ninth Circuit has recently held that district courts have the

authority to enter pretrial case management and discovery orders to ensure that relevant issues are

identified, that the parties have an opportunity to engage in discovery, and litigants

are adequately prepared so that trials can proceed efficiently.  *U.S. v. W.R. Grace*, 526 F.3d 499,

509 (9th Cir. 2008) (noting that courts have inherent authority to control their dockets.); *see also*,

Fed. R. Crim. P. 2 and 16.  Because of the nature of this case, an accelerated time line for the

government's obligations is appropriate.

### IV.    The Unresolved Discovery Disputes

#### A.    Requests (11), (49), (50), and (69) from Defendant's Motion to Compel Production of or Access to Evidence (Doc. 34) relating to Brady/Giglio information.

(11)    *All written documents or electronically stored information, reports, writings or communications relating to any and all investigations, disciplinary hearings or actions or by any name they may be known [sic] concerning any BOP employee that arose after or that is in any way connected to the death of Michael Anita.*

The government contends it has produced the investigative report generated by BOP

related to Michael Anita's murder.  It also represents that it has no information of any disciplinary

hearings or other actions of any employee that arose after the incident that were connected to the

death of Michael Anita.

Defendant requests that this court enter an order finding that the requested information is

material within the meaning of *Brady* and Rule 16.  He further avers that the Court cannot make a

finding that no responsive evidence exists due to the absence of any record on the issue.  Finally,

Defendant requests that the Court enter an order directing the government to produce any

responsive documents that can be found after a diligent search.

**Ruling**:  This Court has previously ordered that the government provide a brief

explanation of what efforts it has made to obtain information when it represents that an item

cannot be located, is no longer in existence, or has been destroyed.  (Doc. 85, pg. 2, lines 19-21).

8

Here, the government indicates that it has no additional information responsive to this request, however, it has not outlined what steps it took to attempt to locate the requested information. The government shall file a response in accordance with this Court's previous order no later than September 30, 2013.  Since the requested information is material, it shall be given to Defendant no later than 120 days prior to trial if it exists.

(49)    *Office of the Inspector General (OIG) information on any and all BOP witnesses.*

The government argues that it will provide OIG information that may be used to impeach the testimony of government witnesses by July 15, 2014, three months prior to trial.[2]  Defendant argues that it only seeks impeachment evidence for witnesses the government may call at trial and the government should be required to produce the information immediately.

**Ruling:**  The Defendant's request is denied in part and granted in part.  The Court will not require that the government identify its witnesses at this early stage in the proceedings.  However, in accordance with the principles outlined above and in the interests of fairness, the United States shall produce OIG information for BOP witnesses it intends to call at trial no later than 120 days prior to trial.  Disclosure of this material (as well as the materials outlined below) in accordance with this schedule will provide Defendant with the requisite time to review the information and to conduct any necessary investigations without delaying the trial.

(50)    *Any and all documents or electronically stored information, reports, writings or communications related to inmate Scott Rollins, Fed. Reg. # 18816-004, including but not limited to his role as a defendant, witness, information [sic] or potential witness or informant in any case whether pursued by the BOP or prosecuted otherwise.*

The government has represented that it has produced all documents and reports regarding Mr. Rollins that it has in its possession. It is currently conducting inquiries to determine whether Mr. Rollins has ever testified on behalf of the government before, or acted as an informant, and

---

[2] The government also avers that Defense counsel has requested OIG information for sixty-five potential witnesses identified by Defendant.  In response, Defendant has indicated that it only seeks OIG information for witnesses the government intends to call at trial.  As a result, the Court will only address this request with regard to the witnesses the government intends to call at trial rather than the more expansive request.

9

whether he has received any benefit as a result of his testimony.  It has stated that it will turn over any information as soon as it is obtained, and no later than July 15, 2014.

Defendant argues that the government has had ample time to find this information and should be ordered to produce it within 30 days.  Defendant further requests that the Court find that the government has not complied with its discovery obligations under *Brady*.

*Ruling*:  The Defendant's request is denied in part and granted in part.  The United States shall produce this information as soon as it is available and no later than 120 days prior to trial.  Defendant's request that the Court find that the government has not complied with its obligations under *Brady* is denied.

(69)   *Any and all documents or electronically stored information, reports, writings or communications related to the compliance or non-compliance with Program Statement 1380.06 (Giglio compliance) in this case.*

The government represents that it has not received any *Giglio* information that it would be required to preserve pursuant to Program Statement 1380.06.  Defendant argues that this is not a meaningful response to this request.   Defendant requests that the government be required to seek and produce this information, as well as to seek and produce any other impeachment information about its witnesses immediately.

*Ruling*:  The Defendant's request is denied in part and granted in part.  The United States shall conduct a diligent search and produce any material information if it exists no later than 120 days prior to trial.

**B.**   **Requests (6), (13), (14), (15) from Defendant's Motion to Compel Production of or Access to Evidence (Doc. 34) relating to the non-preservation of video recordings.**

The specific requests relating to the production and preservation of audio and video recordings between July 30 and July 31, 2003 are as follows :

(6)   *All audio and video recordings of oral statements made by Mr. Stone, including, but not limited to, any statement made in the recreation cage area of the SHU at USP Atwater on*

*July 30, 2003.*

   (13)   *Audio or video recordings of Angelo Fuentes in the places where he was after he was taken out of SHU cell 121 on July 30, 2003.*

   (14)   *Audio or video recordings of the recreation cages of the USP Atwater SHU at all times on July 30, 2003.*

   (15)   *Audio or video recordings of the USP Atwater SHU from 12:00 p.m. on July 29, 2003 through 12:00 p.m. on July 31, 2003.*

   The government argues that it has produced all of the relevant surveillance videos it has in its possession.  However, it asserts some footage was not preserved and was destroyed in the normal course of business.  The surveillance videos were reviewed by FBI and BOP personnel.  The ultimate decision regarding what video would be preserved was made by FBI Special Agent Mardee Robinson and there is no documentation setting forth his decision-making process.  The government asserts it cannot create documentation where none exists, but that Special Agent Robinson will testify at trial on this topic.

   Defendant argues that: (1) the government's representation is incomplete as it only addresses video surveillance, (2) the government has not provided the Court with an affidavit identifying the burdens of reproducing this material, and (3) that BOP policy statement 1240.05 relates to the destruction of evidence, thereby contradicting the government's representations.  Defendant also requests that the Court make various findings of fact based on the government's representations. (Doc. 99, pgs. 9-10).

   **Ruling:**  Requests nos. 6, 13, 14, and 15 are granted in part and denied in part.  The government shall produce any audio and video recordings responsive to these requests it has in its possession but that it has not yet produced.[3]  The United States has represented that Special Agent Robinson made the ultimate decision regarding which video footage would be preserved.  However, as noted above, this Court has previously ordered that the government provide

---

[3] The government has represented in a footnote that the surveillance videos have no audio capabilities, however, the Court is not clear whether this is true for all of the video footage.  Any government response shall clarify this issue with specificity. (Doc. 97, Pg. 10, n3).

11

additional information when it avers information is unavailable.  Here, the government's response lacks the requisite specificity. For example, the government represents that some of the evidence "would have been destroyed pursuant to the normal course of business." However, it is unclear what the BOP's and FBI's policies are with regard to the destruction of evidence, or the routine destruction of surveillance footage. (Doc. 97, pg. 9, pgs. 9-10).  It also appears that while Special Agent Robinson was the main decision-maker regarding the preservation and destruction of evidence, other individuals at the FBI and BOP were involved in reviewing the recordings. Finally, Defendant has submitted evidence that BOP may indeed have written policies related to the destruction/preservation of audio and video files applicable to this request.  *See,* BOP policy statement 1240.05.

Given that some of the audio/video footage was not preserved, the requested information is material for impeachment purposes, as well as to allow Defendant the opportunity to investigate and evaluate whether a jury instruction would be warranted.  *See*, *U.S. v. Giglio*, *supra*; *U.S. v. Sivilla*, 714 F, 3d 1168 (9th Cir. 2013); *U.S. v. Laurent*, 607 F. 3d 895 (9th Cir. 2010).  Defendant is entitled to know the circumstances surrounding the decision to preserve or destroy any audio or video recordings.  Accordingly, the United States must provide additional information about the policies and protocols governing the preservation or destruction of evidence that were in place at the time of this investigation.  An affidavit is not required, however, the government shall provide defense counsel with: (1) the names of the persons involved in the decision-making process of whether to destroy or preserve any audio/video recordings or footage; and (2) a list of all of the audio and/or video recordings that were destroyed (if known).  If the evidence was destroyed pursuant to any policy, or if the recordings were destroyed in the normal course of business, the government shall produce a copy of any relevant policies.  It shall also explain whether the BOP policy statement 1240.05 is relevant here.

If no relevant policies existed at the time of the destruction, the government shall file a brief explanation with the Court outlining the steps it took to attempt to locate the information, or to determine the existence of any such policies no later than September 30, 2013.

Defendant's request that this Court make specific findings of fact based on the government's response is denied.

**C. Request (9) from Defendant's Motion to Compel Production of or Access to Evidence (Doc. 34) relating to documents or electronically stored information, reports, or other writings relating to those charges, including but not limited to, emails exchanged between staff or management at USP Atwater, BOP, the United States Attorney's Office, and the FBI.**

(9)     *All documents or electronically stored information, reports, and other writings relating to these charges, including but not limited to emails exchanged between staff or management at USP Atwater, BOP, the United States Attorney's Office, and the FBI.*

The government argues that Defendant's request is too broad, that he has failed to establish materiality, and that the requested information is protected by the deliberative process and work product privileges.

In response, Defendant contends that his request is limited to emails and other writings consisting of substantive communications about the case, specifically about the timing of the charges brought.  Defendant further argues that the government has not met its burden for asserting deliberative process and work product privileges since it has not provided privilege logs or produced the documents for an *in camera* review.

***Ruling:*** The Defendant's request is denied.  The Court agrees with the government that the request as currently phrased is overbroad.  Accordingly, Defendant has failed to establish the requisite materiality.  As such, the Court will not require that the government produce a privilege log at this time.

Defendant may revise this request.  However, he is cautioned that this Court is not inclined to order the production of documents or communications that contain the government's

13

opinions, analysis, or deliberations regarding the timing of the prosecution, as this information will likely be protected by the deliberative process and/or work product privileges.  However, if Defendant narrows his request, and the government asserts any privilege, government counsel is ordered *again* to produce a privilege log along with the responsive documents for an *in camera review*, subject to the terms of this Court's previous order.  (Doc. 85, pg.2, lines 22-27).

> **D.** **Requests (42) from Defendant's Motion to Compel Production of or Access to Evidence (Doc. 34) relating to information, reports, communications or writing describing the training on crime scene preservation, and the gathering of evidence of the FBI agents and/or BOP employees, agents, or representatives who conducted the crime scene investigation into the death of Michael Anita up until the date of the Anita homicide.**

(42)    *Any and all documents or electronically stored information, reports, communications or writings describing the training on crime scene preservation and the gathering of evidence of the FBI agents and/or BOP employees, agents, or representatives who conducted the crime scene investigation into the death of Michael Anita up to the date and the time of the Anita homicide.*

The government asserts that there are no documents responsive to this request. Defendant argues that the government should be required to provide the Court with an affidavit stating that no documents were found to exist after a diligent search.  Additionally, Defendant argues that he seeks to obtain FBI training and other materials for impeachment purposes, as well as to assess whether a jury instruction regarding the destruction of evidence would be warranted.

**Ruling:**  This Court has previously ordered that the government provide an explanation of what efforts it has made to obtain information when it represents that an item cannot be located, is no longer in existence, or has been destroyed.  (Doc. 85, pg. 2, lines 19-21).  Here, the government's response is insufficient as it includes no attempt to outline what steps it took to identify and locate the requested information. The government merely asserts that the FBI has no existing records for the curriculum on evidence collection and crime scene preservation used in 1996 when Agent Robinson attended the FBI Academy.  (Doc. 97. Pg. 14).  This bare assertion is inadequate.

As previously explained in Section B, *supra*, the Court finds that the requested information is material for impeachment purposes, as well as to allow Defendant the opportunity to investigate whether a jury instruction is warranted.  Accordingly, the government shall conduct a diligent search and produce any responsive documents that are found.  Any policies, manuals or training materials regarding the preservation/collection of evidence that were in effect at the BOP and/or the FBI at the time of the murder, during the investigation, and at the time any evidence was destroyed must be produced.  Production of the material is required whether or not officers or agents relied on the these policies and protocols in conducting the investigation.  These materials shall be produced subject to a protective order and will be for "attorneys' eyes only."  The government shall provide the Court with a proposed protective order prior to the release of any responsive information.  If no materials exist, the government shall file a brief explanation with the Court outlining what steps it took to attempt to locate the requisite information.  The materials must be produced, or alternatively, a response filed by the government, no later than September 30, 2013.

**E.  Requests (66) and (67) from Defendant's Motion to Compel Production of or Access to Evidence (Doc. 34) relating to materials regarding the assault of inmate Stephen Jackson on or about April 24, 2003, and the subsequent prosecution of Angelo Fuentes, Charles Anagal, and Shawn Percy for the assault of Stephen Jackson on or about April 24, 2003.**

(67)    *Any and all documents or electronically stored information, reports, writings, or communications relating to the assault of Stephen Jackson on or about April 24, 2003.*

(68)    *Any and all documents or electronically stored information, reports, writings, or communications regarding the investigation and prosecution of Angelo Fuentes, Charles Anagal, and Shawn Percy for the serious assault of Stephen Jackson on or about April 24, 2003.*

The government has agreed to provide the requested material. Defendant requests that the Court enter an order finding that the government unnecessarily delayed production of the documents, and that the government be required to produce all responsive documents within thirty (30) days.

15

***Ruling:*** The government shall provide the responses to this request no later than September 30, 2013, if it has not already done so.  The Defendant's related request to find that the government unnecessarily delayed production of these documents is denied.

### F.   Requests (a), (h), (i), (j), (k), (l). (m), (p), (s), (t), (u), (v), and (w) from (Doc. 78) relating to the BOP ADX Facility.

Generally, the government argues that these requests are not material because the government will not contend that Defendant cannot be safely housed in prison.  Rather, the government will argue that Defendant poses a risk of future harm based on his history of violence.  Since none of the requested discovery refutes whether the defendant poses a risk of future dangerousness, the requests should be denied.

Defendant argues that in its Notice of Intent to Seek the Death Penalty, the government alleges that Defendant is likely to commit acts of violence in *any setting* which contradicts the government's assertion that the Defendant can be safely housed.  Defendant contends that since the government will argue future dangerousness, he should be able to obtain information demonstrating that, in light of the high-level security measures in place at an ADX facility, he will be unable to commit acts of violence against other inmates and staff.  Finally, Defendant asserts that the ability to safely house him at a Supermax facility is material as it is a mitigating circumstance that courts and jurors in death penalty cases have considered for sentencing purposes.  The Court addresses each of the requests below.

(a)    *An overview description of the ADX and its various units including the General Population Unit, Step down Units (Transitional and Intermediate), Control Unit, Special Security Unit, Special Housing Unit, and the unit known as Range 13.*

The government has already provided some information responsive to this request.  Defendant argues it is too general.  Since the Court has not reviewed the material already produced, it is unable to make a ruling at this time.  The parties are directed to meet and confer and provide the Court with the relevant materials for an *in camera* review.  In the alternative, the

16

government shall produce additional documents responsive to this request.  The government shall

advise the Court of its intentions and either submit the documents for review, or independently

resolve this issue with Defendant no later than September 30, 2013.

(h) *The number of inmates by each calendar year from 2003 to present receiving a commitment directly from the sentencing court to the ADX without first entering a federal prison facility (other than the inmate's pre-trial federal detention facility). For each such inmate, list the offenses of conviction and reasons for the inmate's direct commitment from court to the ADX.*

(i) *The number of inmates by each calendar year from 2003 to the present receiving a commitment to the ADX from another federal prison facility (other than the inmate's pre-trial federal detention facility). For each such inmate, list the institution from which the request was made for the inmate's transfer to the ADX and the reasons given for the inmate's transfer to the ADX.*

(j) *The number of inmates by each calendar year from 2003 to the present that are denied placement by the BOP to the ADX following a request that such a placement be made by another BOP facility. For each such inmate, list the institution from which the request was made for the inmate's transfer to the ADX and the reasons given for the denial of the inmate's transfer to the ADX.*

(k) *A list of inmates that have been released from ADX each calendar year from 2003 to present, and for each such inmate, please provide the following data:*

*1. The date of entry to the ADX,*
*2. Which specific Unit each such inmate was housed in while at the ADX,*
*3. Whether said inmate went through the step down program prior to his being released from the ADX,*
*4. The date of exit to a USP or other Federal facility, and*
*5. The name and security level of the institution to which said inmate was released.*

(l) *The name of any inmates who have been released from any unit of the ADX who have since been returned to the custody of the ADX, along with documentation giving the findings made by the BOP to support the inmate's return to the ADX.*

**Ruling:**  The Court has reviewed requests (h) though (l), and finds the requested

information is not material.  Additionally, the requests implicate privacy concerns of other

inmates. The government has provided some information responsive to these items which the

Court finds is sufficient.  Defendant's requests for additional responses to these requests are

denied.

(m) *The statistical data for Prohibited Acts and Injury Assessment for Acts of Inmate Misconduct that is required to be collected and maintained by §541.8, Chap. 5, Appendix D of P.S. 5270.09 (Inmate Discipline Program), including all prohibited acts listed therein, for the ADX from 2003-2012.*

1.     *With regard to the prohibited acts listed above, please provide the names of the inmates so charged with each such act.*

The government has provided a list of the number of guilty findings for all prohibited acts committed at Florence ADX from 2003 through 2012.  However, the government has not provided identifying information to track which inmates committed these acts.  Defendant argues that identifying information is needed because it is believed that most of these incidents are caused by only a few repeat offenders within the ADX.  Therefore, it is possible that most of the inmates at that institution do not act out.

**Ruling:**  Defendant's request is granted in part.  The government shall provide Defendant with the number of different inmates involved in the incidents (i.e., 25 different inmates committed all of the prohibited acts), but it shall not be required to report any names.  The government shall respond to this request no later than September 30, 2013.

*(p) Specify the number of inmates serving life without parole for a homicide that occurred within the BOP and their current institutional placement.*

Defendant contends that the government has produced a list of inmates that is responsive to this request, however, the inmates' names are completely redacted, and the list does not include information about the inmates' current placements.

**Ruling:**  The Defendant's request is granted in part and denied in part.  The government shall produce information identifying the number of inmates meeting this criteria (if it has not already done so), as well as their current placement no later than September 30, 2013.  The inmates' identities need not be produced.

*(s) For inmates serving life without parole for a homicide that occurred within the BOP, the statistical data for Prohibited Acts and Injury Assessment for Acts of Inmate Misconduct (including all prohibited acts listed therein) that is required to be collected and maintained by §541.8, Chap. 5, Appendix D of P.S. 5270.09 (Inmate Discipline Program), from calendar years 2003-2012.*

**Ruling:** This request is not material and is denied.

*(t) Documents, diagrams, and photos describing the purpose, physical layout, policies*

18

*regarding inmate-staff contact, daily activities, movement, and privileges for inmates on Range 13.*

   ***Ruling* :**  Defendant's request is not material and is denied.

   *(u) Documents describing the criteria for being placed in Range 13 at ADX Florence.*

   ***Ruling:***  Defendant's request is granted.  The government shall produce this information if it exists no later than September 30, 2013.  If no documents exist that are responsive to this request, the government shall briefly advise the Court what steps were taken to attempt to locate this information by the same date.

   *(v) Documents describing the policy regarding release of inmates from Range 13.*

   ***Ruling:***  Defendant's request is granted.  The government shall produce this information if it exists no later than September 30, 2013.  If no documents exist that are responsive to this request, the government shall briefly advise the Court what steps were taken to locate this information by the same date.

   *(w) List the inmates housed in Range 13 since ADX opened, date of entry and date of exit.*

   *Ruling*:  Defendant's request is not material and is denied.

**V.  The Discovery Deadline**

   Defendant requests that he be permitted to file additional discovery from the government ninety (90) days after any discovery is produced so that he may informally request supplemental materials from the government. He requests an additional 30 days to file a formal discovery motion if the government's responses are inadequate.  The United States opposes allowing Defendant four more months to request additional discovery.  The government argues that if information it provides leads to additional discovery that is material to the defense, the Government will voluntarily produce it.  Therefore, it urges the Court not to adopt Defendant's proposed plan.

   The Court is not persuaded by the government's position.  It is noted that the government

was still producing documents as late as April and May 2013.  Given this delay, it is disingenuous for the government to oppose allowing additional time to file discovery motions.  However, given the limited nature of this discovery order, allowing four months after the discovery is produced to file additional motions is excessive.  Accordingly, the deadline for filing discovery motions is December 31, 2013.

**VI.    Conclusion**

Based on the above, Defendant's Motions to Compel Discovery (Docs 34, 78, and 95) is GRANTED IN PART AND DENIED IN PART as outlined above.

IT IS SO ORDERED.

Dated:   **August 27, 2013**                          **/s/ Gary S. Austin**
                                                      UNITED STATES MAGISTRATE JUDGE