DONALD ROBERT KNIGHT, Pro Hac Vice
Knight & Moses, LLC
7852 South Elati Street, Suite 201
Littleton, Colorado 80120
Telephone:  303/797-1645
Facsimile:  303/730-0858
E-mail:  don@knightandmoses.com

HEATHER E. WILLIAMS, SB#122664
Federal Defender
ALEXANDRA NEGIN, SB # 250376
Assistant Federal Defender
TIVON SCHARDL, FL Bar #73016
Trial & Habeas Counsel
801 I Street, 3rd Floor
Sacramento, California 95814
Telephone:  916/498-6666
Facsimile:  916/498-6656
E-mail:  lexi_negin@fd.org
          tim_schardl@fd.org

Attorneys for Defendant
SAMUEL RICHARD STONE

## IN THE UNITED STATES DISTRICT COURT

## FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>vs.<br><br>SAMUEL RICHARD STONE,<br><br>Defendant. | Case No. 1:12-CR-0072-JCC-GSA<br>**DEATH PENALTY CASE**<br><br>MOTION TO STRIKE NON-<br>STATUTORY AGGRAVATING<br>FACTORS AND BRIEF IN SUPPORT<br><br>Date:      N/A<br>Time:      N/A<br>Judge:    The Hon. John C. Coughenour |

### NOTICE OF MOTION & MOTION FOR RELIEF

TO ALL COUNSEL OF RECORD:  Defendant SAMUEL RICHARD STONE, by and

through undersigned counsel, pursuant to the Fifth, Sixth and Eight Amendments to the United States

Constitution, moves this Court to strike non-statutory aggravating factors from the Notice of Intent to

Seek Death.  This motion is based on the files and records in this case, the attached memorandum of points and authorities, exhibits, and any further evidence or argument the Court may entertain.[1]  This motion will be heard at such a date and time as the Court deems appropriate.  Mr. Stone requests oral argument.

## MEMORANDUM OF POINTS AND AUTHORITIES

On March 22, 2012, the Government filed its Notice of Intent to Seek a Sentence of Death (hereinafter "Notice")(Doc. 3).  In the Notice, the Government lists the statutory threshold findings of 18 U.S.C. § 3591 (a)(1) and (2)(A)(B)(C)&(D).  The Government also lists five statutory aggravating factors under 18 U.S.C. §3592(c).  Lastly, the Government lists four non-statutory aggravating factors as follows:

1. **Pattern of Violent Criminal Conduct.**  The defendant, SAMUEL STONE, from at least age fifteen and continuing into his adult life, engaged in a continuing pattern of violent criminal conduct against other individuals, including, but not limited to, the following: threat of violence towards others; the physical beating of others; and the killing others.

2. **Lack of Remorse.**  The defendant, SAMUEL STONE, has displayed no remorse for the murder of Michael Anita.

3. **Future Dangerousness.**  The defendant, SAMUEL STONE, poses a continuing danger to others in that he is likely to commit additional acts of violence in any setting against inmates, prison guards and other officials at correctional institutions where is will be incarcerated, as evidenced by his past acts of violence and pattern of violence.  *See Simmons v. South Carolina*, 512 U.S. 154, 162-164 (1994).

4. **Victim Impact Evidence.**  The defendant, SAMUEL STONE, caused injury, harm, and loss to Michael Anita's family as evidenced by the impact of his death upon his family.  18 U.S.C. §3592(a), *See Payne v. Tennessee*, 501 U.S. 808, 825-826 (1991). (Doc 3 at 3-4).

Mr. Stone moves to strike non-statutory aggravating factors 1, 2, and 3.

---

[1] Defendant incorporates all of his other motions dealing with the constitutionality of the Federal Death Penalty into this motion by specific reference.

I.      **THE "PATTERN OF VIOLENT CRIMINAL CONDUCT" AND "FUTURE DANGEROUSNESS" FACTOR SHOULD BE STRICKEN.**

The government's Notice with respect to "Pattern of Violent Criminal Conduct" and "Future Dangerousness" are vague and invalid for the following reasons:

1.  *The "future dangerousness" and "pattern of violent criminal conduct" aggravating factors are unconstitutionally vague.*

The concept of "future dangerousness" and "pattern of violent criminal conduct" and how the two are blended together in the Notice are too vague and overbroad to satisfy the requirements of a valid non-statutory aggravating factor.  Therefore, these aggravating factors should be stricken.  *See United States v. Johnson*, 136 F. Supp. 2d 553, 560-61 (W.D. Va. 2001) (striking future-dangerousness and other non-statutory aggravating factors and granting government leave to amend to re-draft its non-statutory facts in "short declarative sentences.")

2.  *Congress did not intend for "future dangerousness" nor "pattern of violent conduct" to be considered as separate aggravating factors.*

Many capital sentencing schemes provide that evidence of a defendant's future dangerousness may be admitted in aggravation.  *See, e.g., Jurek v. Texas*, 428 U.S. 262, 274-76 (1976))(upholding use of future dangerousness provision in Texas statute). Because Congress chose not to include such a "future dangerousness" or "pattern of violent conduct" provision within the enumerated aggravating factors, Congress intended that this general factor not be considered as a separate aggravating factor. *Cf. West Coast Truck Lines v. Arcata Comm. Recycling*, 846 F.2d 1239, 1244 (9th Cir. 1988) ("[w]hen some statutory provisions expressly mention a requirement, the omission of that requirement from other statutory provisions implies that Congress intended both the inclusion of the requirement and the exclusion of the requirement").

Instead of adopting a general "future dangerousness" or "pattern of violent conduct" provision, Congress chose to set forth several specific statutory aggravating factors regarding the commission of the offense for which the defendant stands charged and/or a defendant's past criminal conduct that Congress found to be correlated with a defendant's likelihood of committing violent crimes in the future.  18 U.S.C. §3592(c).  Congress's inclusion of these criminal history factors was based upon the notion that the commission of prior crimes correlates with the likelihood of recidivism, or a defendant's "continuing danger."  *See* U.S.S.G. Chapter 4 – Part A, Introductory Commentary

(criminal history factors are "consistent with the extant empirical research assessing correlates of recidivism and patterns of career criminal behavior").  Since Congress was doubtless concerned with the future dangerousness of violent offenders, and since it adopted several specific aggravating factors directly related to this notion, but refrained from including as a specific statutory aggravating factor  the defendant's "continuing danger" or "future danger" or "pattern of violent conduct" it clearly did not intend that a non-statutory factor of the defendant's "future dangerousness" or "pattern of violent conduct" be permissible to submit to a jury, especially where there are specific statutorily-authorized factors that arguably indicate future dangerousness and reference prior criminal convictions.

To add these vague and poorly-defined non-statutory aggravating factors of "future dangerousness" **and** "pattern of violent conduct" is merely piling on and may actually constitute "double counting" of aggravating factors.  "Such double counting of aggravating factors, especially under a weighing scheme, has a tendency to skew the weighing process and creates the risk that the death sentence will be imposed arbitrarily and thus, unconstitutionally." Stringer v. Black, 503 U.S. 222, 232 (1992).

As the Supreme Court of Utah pointed out, when the same aggravating factor is counted twice, the "defendant is essentially condemned 'twice for the same culpable act,'" which is inherently unfair. *Parsons v. Barnes*, 871 P.2d 516, 529 (Utah) (quoting *Cook v. State*, 369 So. 2d 1251, 1256 (Ala. 1978)), *cert. denied*, 513 U.S. 966 (1994). While the federal statute at issue is a weighing statute which allows the jury to accord as much or as little weight to any particular aggravating factor, the mere finding of an aggravating factor cannot but imply a qualitative value to that factor. *Engberg v. Meyer*, 820 P.2d 70, 89 (Wyo. 1991). When the sentencing body is asked to weigh a factor twice in its decision, a reviewing court cannot "assume it would have made no difference if the thumb had been removed from death's side of the scale." *Stringer,* 503 U.S. 222, 232.  In *Stringer* the Supreme Court made it clear that "when the weighing process itself has been skewed, only constitutional harmless-error analysis or reweighing at the trial or appellate level suffices to guarantee that the defendant received an individualized sentence."  503 U.S. 222, 232.

The 10th Circuit has held "that the use of duplicative aggravating factors creates an unconstitutional skewing of the weighing process which necessitates a reweighing of the aggravating and mitigating factors. To the extent that Congress wants a particular aggravating factor to receive enhanced

weight in the sentencing process, it can provide for such enhancement in the statute itself. However, Congress elected not to do so, and the prosecutor cannot attempt to circumvent Congress's inaction by introducing the same factor in a different guise a second time." *United States v. McCullah*, 76 F.3d 1087, 1111-1112 (1996). *See also Jones v. United States*, 527 U.S. 373, 393 (1999) ("...the weighing process may be impermissibly skewed if the sentencing jury considers an invalid factor").

Congress implicitly rejected the use of such a broad aggravating factors, and it cannot be adopted now by the government.

### 3. *Future Dangerousness No Longer Constitutes a Rational Basis Upon Which to Impose a Sentence of Death.*

Given the extremely secure facilities available to the Bureau of Prisons, such as the "supermax" prison known as ADX in Florence, Colorado, where Mr. Stone himself was housed without incident for six years, any future danger posed by Mr. Stone can be neutralized by the government.  Therefore, future dangerousness no longer constitutes a rational basis upon which to impose the death penalty and should be stricken from the Notice for that reason alone.

In United States v. Diaz, 2007 WL 656831 (unreported in F.Supp.)(N.D. Cal. 2007), the court considered just such a step:

> "Notwithstanding the general acceptance of evidence of future dangerousness, the Court is concerned that evidence of defendants' potential for future dangerousness may be irrelevant and more prejudicial than probative. The government's maximum security prison facilities are equipped to handle the country's most dangerous criminals. It is certainly possible that such protections will be sufficient to neutralize the potential dangerousness of defendants Diaz and Fort if they are sentenced to life in prison without the possibility of parole. Indeed, the parties agree that evidence of defendant's future dangerousness should be limited to that which shows their potential for dangerousness while incarcerated (emphasis in original). If, however, the government's incarceration protocols would nullify defendants' dangerousness, presentation of this evidence to the jury would not be relevant to the sentencing determination."

*United States v. Diaz*, 2007 WL 656831, *Diaz* at 23 (citing *United States v. Llera Plaza*, 179 F. Supp. 2d 464, 488 (E.D. Pa. 2001)("[ I]n the FDPA context, government arguments regarding 'future dangerousness' should be limited to the dangers posed by defendants while serving a life sentence in prison.").

Judge Alsup in *Diaz* did not make a ruling on the matter at the time, but in directing the government to revise its notice of intent, he said, "the government should indicate how its proffered evidence would correlate with defendants' potential for future danger if they were imprisoned for life

5

without the possibility of parole. The death notices should also set forth reasons why the government's incarceration facilities and prison-security protocols would be insufficient to neutralize defendants' potential for harm." *Diaz*, at 23.

At a minimum, given the government's stipulation that it is not going to argue that there is not any place where Mr. Stone can be safely housed (See, Discovery Order (Doc. 106) at 16 "the government will not contend that Defendant cannot be safely housed in prison"), this Court should at least order the same revision, to the Notice of Intent as the judge did in *Diaz*.

### 4. Future Dangerousness Is Too Unreliable to Serve as a Valid Aggravating Factor.

Doubts about the reliability of future-dangerousness predictions in capital cases have persisted and grown. One Fifth Circuit judge, surveying the literature in 2000, noted that there was virtual consensus in the scientific community that psychiatrists cannot reliably predict dangerousness. *Flores v. Johnson*, 210 F.3d 456, 463 (5th Cir. 2000) (Garza, J., concurring). In *United States v. Sampson*, 335 F. Supp. 2d 166, 218-23 (D. Mass. 2004), the district court suggested that the Supreme Court should revisit the issue of future dangerousness addressed in *Barefoot v. Estelle*, 463 U.S. 880 (1983), in light of more recent legal and scientific developments indicating that such testimony is unreliable.

*Sampson* also noted that juries fare no better than psychiatrists in accurately predicting a defendant's risk of future violence. 335 F. Supp. 2d at 222. This point was graphically illustrated by the circumstances in *Evans v. Muncy*, 498 U.S. 927 (1990). In his dissent from the denial of a stay of execution, Justice Marshall noted that future danger had been the sole aggravating factor on which the defendant had been sentenced to death. *Id.* at 927. But during Evans' ten years on death row, his behavior had been "exemplary." *Id.* at 929. Indeed, during a prison riot (in which he played no instigating role), Evans "took decisive steps to calm the riot, saving the lives of several [guard] hostages, and preventing the rape of one of the [hostage] nurses." *Id.* at 928. The "jury's prediction of Evans' future dangerousness," in short, was "clear error"; they had simply "g[o]t it wrong." *Id.* at 929-30.

The body of empirical evidence regarding the unreliability of predictions of dangerousness has only grown since *Flores* and *Sampson*. A 2007 study—the first of federal prisoners convicted of capital crimes and sentenced to life imprisonment—found that there were no statistically significant differences in rates of violence between (1) capital life inmates against whom the government had formally alleged future dangerousness as an aggravating factor and (2) those without such an allegation. See Mark D.

Cunningham, Thomas J. Reidy, and Jon R. Sorensen, *Assertions of "Future Dangerousness" at Federal Capital Sentencing: Rates and Correlates of Subsequent Prison Misconduct and Violence*, 32 Law and Hum. Behav. 46 (2008).[2]  In other words, the government's predictions of future dangerousness were utterly unreliable.  The rates of violence were quite low among those inmates against whom the government had alleged future dangerousness, just as they were for the larger group of all capital life inmates.  For example, only 9.6% of the "future danger" life inmates had been cited for a "serious assault."  This classification included attempted assaults and incidents in which no injury or only minor injury was sustained.

Federal jurors fair no better than prosecutors at predicting future dangerousness. Another study of 72 federal inmates who had been capitally tried and either sentenced to life imprisonment or death over two decades, compared rates of serious prison violence against jury findings on this aggravating factor.  It found that more than 90 percent of the defendants whom jurors had judged dangerous had, in fact, not engaged in any serious violence in prison in the ensuing years.  *See* Mark D. Cunningham, Jon R. Sorensen, Thomas J. Reidy, *Capital Jury Decision-Making: The Limitations of Predictions of Future Violence*, 15 Psychology, Public Policy & Law 223, 239-40 & Table 4 (2009).

The unreliability of the future-dangerousness aggravating factor merits close examination. Mr. Stone requests an evidentiary hearing on this issue.  Mr. Stone further requests leave, filed on this same date, in a separate Motion for Extension of Time, to file any additional arguments or motions on the issue of the future dangerousness non-statutory aggravator to 30 days after the conclusion of the ongoing discovery litigation.

### 5.  The "Future Dangerousness" Aggravator Should be Stricken Because it Undermines the Beyond-a-Reasonable-Doubt Standard.

The FDPA provides that "[t]he burden of establishing the existence of any aggravating factor is on the government, and is not satisfied unless the existence of such factor is established beyond a reasonable doubt." 18 U.S.C. § 3593 (c); *see also United States v. Lujan*, 603 F.3d 850 at 857(10th Cir. 2010) (future dangerousness "must be proven beyond a reasonable doubt").  However, the

---

[2] The authors used information from the Bureau of Prisons about 145 capital murderers who had entered prison under a life sentence between 1991 and 2005.

government seeks to prove here only that it is "likely" that Mr. Stone might be a future danger.  This is plainly contrary to *Lujan* and to section 3593(c).

In this case, should a penalty phase become necessary, the government intends to prove that Mr. Stone "poses a continuing danger to others in that he is likely to commit additional acts of violence..." (Doc. 3 at 3-4.)  "It is not clear what is meant by 'likely.'" *United States v. Nelson*, 921 F. Supp. 105, 121 (E.D.N.Y. 1996).  "Likely implies that the probability of [something] occurring should be better than 50 percent." *Id.* The Court noted that other dictionary definitions include "of such a nature or so circumstantial as to make something probable ... having a better chance of existing or occurring than not; having the characteristic of a probability." *Id.* at n.7.  "Likely" may also mean "'probable ... in all probability ... Likely is [a] word of general usage and common understanding, broadly defined as of such nature or so circumstantial as to make something probable and having [a] better chance of existing or occurring than not.'" *Id.* at n.7 (quoting Black's Law Dictionary 925 (6th ed. 1990)).  Other possible meanings are "plausible," "having an appearance of truth or fact," and "within the realm of credibility." *System Management Arts, Inc., v. Avesta Technologies, Inc.*, 137 F. Supp. 2d 382, 387 (S.D.N.Y. 2001) (citing several dictionary definitions).

Whatever the definition of "likely" might be, it is plainly much less than beyond a reasonable doubt.

It is not sufficient to tell the jurors that they must find "beyond a reasonable doubt" that Mr. Stone is "likely to" commit future acts of violence.  Such an instruction fails to alter the inherently diluted standard of proof of the aggravator.  Furthermore, the very notion of a likelihood or probability being proved beyond a reasonable doubt is, at its core, incoherent.  The Supreme Court recognized in a different context:

> But to say in this context that one must demonstrate that something is more probably clearly erroneous than not or more probably than not unreasonable is meaningless. One might as intelligibly say, in a trial court, that a criminal prosecutor is bound to prove each element probably true beyond a reasonable doubt.  The statute is thus incoherent with respect to the degree of probability of error required of the employer to overcome a factual conclusion made by the plan sponsor.

*Concrete Pipe and Prods. of Calif. v. Constr. Laborers Pension Trust for Southern Calif.*, 508 U.S. 602, 625 (1993).  Similarly here, how can the government rationally explain to the Court what it means to prove a "likelihood" of something beyond a reasonable doubt?

Case law regarding the purpose of the reasonable-doubt standard at trial confirms the unacceptability of diluting it at sentencing through the importation of the "likely" standard in this aggravating factor. "The reasonable-doubt standard . . . is a prime instrument for reducing the risk of convictions resting on factual error." *In re Winship*, 397 U.S. 358, 363 (1970). Thus, when instructing charging jurors about the burden of proof beyond a reasonable doubt, a court should "impress[] upon" them "the need to reach a subjective state of near certitude of the guilt of the accused." *Victor v. Nebraska*, 511 U.S. 1, 15 (1994) (citation omitted); *see also Winship*, 397 U.S. at 364 (reasonable-doubt standard requires the government to "convinc[e] a proper factfinder" of defendant's "guilt with utmost certainty").

It stands to reason that Congress adopted the reasonable-doubt standard for aggravating factors in FDPA because it wanted to ensure that, before any jury weighed alleged conduct by the defendant in favor of a death sentence, the government had to prove the conduct with "near" or "utmost certainty." Surely Congress chose this stringent standard to try to prevent, as much as reasonably possible, death verdicts "resting on factual error." *Winship*, 397 U.S. at 363. Yet allowing a defendant to be dispatched to execution because jurors believe it "likely" he will engage in future criminal conduct raises the significant specter of just such an error.

> **6.   The "Future Dangerousness" Aggravator Should be Stricken Because the allegation that Mr. Stone "is likely to" commit Future Crimes Undermines the Constitutional Requirement for Heightened Reliability in a Capital Case.**

A vague and meaningless finding that a particular defendant is "likely" to be a future danger also offends the constitutional imperative of heightened reliability for imposition of the death penalty, because it allows the kind of "open-ended discretion" that has been forbidden in the capital context. *See Maynard v. Cartwright*, 486 U.S. 356, 361-64 (1988) (striking "especially heinous, atrocious, or cruel" aggravator as unconstitutionally vague). The finding would also be based on caprice and emotion (fear), rather than on reason, as the Eighth Amendment demands. *See Gardner v. Florida*, 430 U.S. 349, 358 (1977). As previously discussed, the future-danger aggravator raises particular reliability concerns. Even accepting its validity, the fact remains that a future-danger determination is necessarily speculative. As the studies and research demonstrate, it is impossible for anyone to predict with any certainty, much less beyond a reasonable doubt, whether a particular defendant will be a future danger. Accordingly, the future-dangerousness aggravator should be stricken.

7.  *The "Future Dangerousness" and "Pattern of Violent Conduct" Aggravators Should be Stricken Under 18 U.S.C. 3593(c) Because of the danger of Unfair Prejudice.*

Mr. Stone recognizes that under the FDPA, the Federal Rules of Evidence do not apply to information presented at a capital sentencing hearing.  Nonetheless, information presented by the government must be sufficiently reliable to support a sentence of death.  Furthermore, the Court is authorized to exclude information if "its probative value is outweighed by the danger of creating unfair prejudice ...."  18 U.S.C. §  3593(c).

In this case, any probative value that the government's "information" concerning the future dangerousness and pattern of violence non-statutory aggravating factor would be outweighed by the danger of unfair prejudice. As numerous studies have shown, predictions of what individuals will commit criminal acts of violence in the future are notoriously unreliable. *See, e.g. Sampson*, 335 F. Supp. 2d at 219-222.  Thus, assuming arguendo that such information has any probative value, it is minimal.  And that minimal value is easily outweighed by the danger of unfair prejudice.  As noted in *Sampson*, "[j]urors ... may give great deference to the testimony of a psychiatrist as a supposed expert for purposes of determining future dangerousness .... There is good reason to fear that the testimony of a psychiatrist on the issue of future dangerousness will be given more weight than it deserves." *Id.* at 220 (stating that "this court would probably have excluded any expert evidence offered on future dangerousness because its probative value would have been outweighed by the danger of creating unfair prejudice.").

## II.   RELIANCE UPON A NOTION OF "LACK OF REMORSE" VIOLATES MR. STONE'S FIFTH AND SIXTH AMENDMENT RIGHTS AND PERMITS UNRELIABLE JURY FINDINGS.

The Notice cites "lack of remorse" as a non-statutory aggravator.  "Lack of remorse" is the absence of an admission of guilt and of an expression of contrition.  Use of "lack of remorse" as an aggravating "sub-factor" violates both Mr. Stone's Fifth Amendment right to remain silent and his Sixth Amendment right to trial, because it imposes an impermissible penalty upon the exercise of those rights. *See Lesko v. Lehman*, 925 F.2d 1527, 1543-45 (3d Cir. 1991); *See United States v. Davis*, 912 F. Supp. 938, 944 (E.D. La. 1996) (*Davis II*) (recognizing that the Supreme Court "mandates that judicial discretion be exercised and the non-statutory factors be carefully screened." ("[T]he allegation of lack of remorse encroaches dangerously on an offender's constitutional right to put the government

to its proof.").[3]  Moreover, because it is inherently unreliable, use of lack of remorse as an aggravating consideration violates the Eighth Amendment.

Alternatively, if lack of remorse is a proper non-statutory aggravating factor, then the government must make a far greater showing than anything that has been alleged in this case:

> Of course, the information adduced in support of the aggravator is subject to scrutiny to ensure that it is relevant, reliable, and that its probative value outweighs any danger of unfair prejudice, confusion, or misleading the jury.  There must be a showing of continuing glee, boastfulness, or other affirmative conduct which indicates a pervading and continuing lack of remorse following the criminal conduct.  In addition, the government may not urge the applicability of the aggravator on information that has a substantial possibility of encroaching on the defendants' constitutional right to remain silent.

*United States v. Roman*, 371 F. Supp. 2d 36, 50 (D.P.R. 2005) (citations omitted).

The Fifth Amendment provides that "No person ... shall be compelled in any criminal case to be a witness against himself...."  U.S. Const., amend. V.  A criminal defendant thus has a right to remain silent in the face of accusation, and he may not punished for exercising this right.  *Lefkowitz v. Cunningham*, 431 U.S. 801, 805 (1977) (government "may not impose substantial penalties because a witness elects to exercise his Fifth Amendment right not to give incriminating testimony against himself"); *Malloy v. Hogan*, 378 U.S. 1, 8 (1964) (defendant has right "to remain silent unless he chooses to speak in the unfettered exercise of his own will, and to suffer no penalty ... for such silence").  This right is so absolute that a prosecutor cannot even comment on the accused's exercise of the right.  *Griffin v. California*, 380 U.S. 609, 615 (1965).

In a capital case, permitting the jury to weigh the accused's alleged lack of remorse against him in deciding whether to impose the death penalty substantially penalizes the exercise of his Fifth Amendment right to remain silent and Sixth Amendment right to trial.  After all, in order to make a sincere showing of remorse, a defendant must first admit guilt of the capital offense with which he is charged and thereby waive his privilege against self-incrimination, in essence pleading guilty.

---

[3]  In *United States v. Glover*, 43 F. Supp. 2d 1217, 1227 (D. Kan. 1999), the court found that the information provided was insufficient to allow the court to assess whether submission of a lack of remorse factor to the jury would be appropriate.  The court thus required the government "to more specifically articulate the nature of this aggravator by setting out the factual basis on which it intends to show Mr. Glover's lack of remorse."  *Id.*

11

Permitting an aggravating factor involving "lack of remorse" to weigh in favor of a death sentence would allow the jury to punish the defendant for exercising his right not to admit guilt and go to trial. To burden a defendant's exercise of his rights under the Fifth and Sixth Amendments by making that exercise a basis for imposing the death penalty clearly violates the Constitution. *United States v. Jackson*, 390 U.S. 570, 582-83 (1968); *see also Johnson v. Mississippi*, 486 U.S. 578, 585 (1988) (death sentence "cannot be predicated ... on 'factors that are constitutionally impermissible'") (quoting *Zant v. Stephens*, 462 U.S. 862, 885 (1983)).

This conclusion is entirely consistent with the law of non-capital federal sentencing. Remorse can be the basis for leniency, but it cannot be the basis for *increasing* punishment. For example, the Second Circuit has held that it is error for a court to enhance a defendant's punishment because he did not admit his guilt and went to trial. *United States v. Cruz*, 977 F.2d 732, 733-34 (2d Cir. 1992). Thus, lack of remorse by itself is not a basis for an upward departure. *United States v. Whitehead*, 912 F.2d 448, 452 (10th Cir. 1990) (lack of contrition "should not normally be a factor justifying a departure"). A court may, however, grant leniency for admissions of guilt evidencing sincere remorse by reducing punishment below the degree that would otherwise be imposed on the basis of "acceptance of responsibility." U.S.S.G. § 3E1.1; *see United States v. Cojab*, 978 F.2d 341, 343 (7th Cir. 1992). Thus, remorse, the expression of contrition for the commission of a crime, may be considered in sentencing only as a factor permitting the reduction of a sentence below the level that would otherwise have been imposed. Its absence may not be considered as a basis for increasing a sentence, much less for imposing the penalty of death. *See Pope v. State*, 441 So.2d 1073, 1078 (Fla. 1984) ("Any convincing evidence of remorse may properly be considered in mitigation of the sentence, but absence of remorse should not be weighed either as an aggravating factor nor as an enhancement of an aggravating factor").

Consideration of "lack of remorse" is unconstitutional as well due to its disproportionate impact on innocent defendants. A defendant who is actually innocent will simply be unable to express remorse for doing something he did not do. Nonetheless, if wrongfully convicted, and this factor is allowed to be weighed against him, then he will be more likely to be sentenced to death.[4] Capital

---

[4] At this juncture, no one can be heard to seriously argue that innocent people have never been executed.

jurors should not be allowed to weigh a factor in favor of death that would apply in the case of every innocent person, thus making the innocent more likely to be executed.

The "lack of remorse" factor also violates the Eighth Amendment because, in a capital prosecution, there is a "heightened need for reliability," and allowing the jury to place lack of remorse on the scales in favor of death creates an unacceptable risk that the defendant's sentence will not be reliably obtained.  In *Pope*, the Florida Supreme Court barred evidence of a defendant's lack of remorse as aggravation in a penalty phase of a capital case to avoid just such "mistaken" sentences:

> Unfortunately, remorse is an active emotion and its absence, therefore, can be measured or inferred only from negative evidence.  This invites the sort of mistake which occurred in the case now before us—inferring lack of remorse from the exercise of constitutional rights.

441 So.2d at 1078.[5]

In *Davis II*, 912 F. Supp. at 938, the court also ruled that lack of remorse was too unreliable to serve as a valid aggravating factor:

> Lack of remorse is a subjective state of mind, difficult to gauge objectively since behavior and words don't necessarily correlate with internal feelings. In a criminal context, it is particularly ambiguous since guilty persons have a constitutional right to be silent, to rest on a presumption of innocence and to require the government to prove guilt beyond a reasonable doubt.

*Id.* at 946.[6]

Given the constitutional infirmities of this aggravating consideration, the unreliability it injects into the proceeding, and its duplication of other aggravating factors, it is not surprising that a number

---

[5]  Even in non-capital cases, some state courts preclude evidence of lack of remorse to enhance a defendant's sentence where the defendant has entered a denial of guilt.  *See Arizona v. Tinajero*, 935 P.2d 928, 935 (Az. App. 1997) ("[w]hen a convicted person maintains his innocence through sentencing, as Tinajero did here, his failure to acknowledge guilt 'is irrelevant to a sentencing determination' and 'offends the Fifth Amendment privilege against self-incrimination'") (citation omitted);  *People v. Holguin*, 213 Cal. App. 3d 1308, 1319, 262 Cal. Rptr. 331, 337 (1989) (defendant's lack of remorse may not be used as a sentencing factor where the defendant has denied guilt and the evidence of guilt is conflicting).

[6]  The court permitted the government to show evidence of lack of remorse, other than the defendant's silence, as part of its "future dangerousness" aggravating factor.  *Davis II*, 912 F. Supp. at 946. However, the Court cautioned, "Threatening words and warped bravado, without affirmative acts, are simply too slippery to weigh as indicators of character; too attenuated to be relevant in deciding life or death; and whatever probative value they might have is far outweighed by the danger of unfair prejudice and confusion of the issues."  *Id.* at 945.

of courts have stricken it from a capital case.  In *United States v. Walker*, 910 F. Supp. 837, 855 (N.D.N.Y. 1995), the court held that highly prejudicial statements of the defendant, which the government claimed showed lack of remorse, but which were subject to competing inferences, could not be the basis for an independent aggravating factor.  In *Roman*, 371 F. Supp. 2d at 50-51, the court allowed evidence of lack of remorse regarding one defendant (who had, *inter alia*, gone on a post-murder shopping spree, adopted a new nickname in reference to the murder, and made a "triumphant demonstration of his sharpshooting technique") but did not allow it against the other defendant where the information was "too speculative, and too intertwined with his conduct during the crime that such that it cannot indicate continued remorselessness."  Finally, in *United States v. Nguyen*, 928 F. Supp. 1525 (D. Kan. 1996), the court denied a motion to strike this aggravator, but cautioned the Government that its evidence must be "more than mere silence," must be relevant, must be reliable, and "its probative value must outweigh any danger of unfair prejudice."  *Id.* at 1542.

The bare allegation made by the government in this case cannot meet the standards set by the Constitution or by the case law.  This Court should prohibit the government from using "lack of remorse" as an aggravating factor (or sub-factor).

**III.    NEITHER THE FUTURE DANGEROUSNESS FACTOR NOR ANY OTHER AGGRAVATING FACTOR SHOULD BE ALLOWED TO GO TO THE JURY WITHOUT PRIOR JUDICIAL SCREENING OF THE SPECIFIC EVIDENCE THE GOVERNMENT INTENDS TO INTRODUCE IN SUPPORT OF EACH FACTOR TO ENSURE THAT THE EVIDENCE MEETS THE HEIGHTENED STANDARD OF RELIABILITY REQUIRED UNDER THE EIGHTH AMENDMENT AND THE EVIDENTIARY REQUIREMENTS OF 18 U.S.C. § 3593.**

Under the FDPA, this Court retains a gatekeeping function to ensure the exclusion of unreliable or prejudicial information that might render a trial fundamentally unfair.  *United States v. Fell*, 360 F.3d 135, 145 (2d Cir. 2004).  Mr. Stone submits that the government should not be allowed to proceed on future dangerousness or any of the other aggravating factors listed in the Notice without having first provided more specific notice of the evidence it intends to introduce in support of these factors, and without these aggravating factors ad such evidence having been subjected to a searching, pre-trial screening process by the Court.

///

///

## IV.    CONCLUSION

For these reasons, Mr. Stone moves the Court to strike the non-statutory aggravators 1, 2, and 3 from the Notice of Intent to Seek Death (Doc. 3).

DATED:        September 9, 2013

Respectfully submitted,

*/s/ Donald R. Knight*
DONALD R. KNIGHT

HEATHER E. WILLIAMS
Federal Defender

*/s/ Lexi Negin*
ALEXANDRA NEGIN
Assistant Federal Defender

*/s/ Tivon Schardl*
TIVON SCHARDL
Trial & Habeas Attorney

ATTORNEYS FOR SAMUEL RICHARD STONE