THE HONORABLE JOHN C. COUGHENOUR

1
2
3
4
5
6
7

**IN THE UNITED STATES DISTRICT COURT**

8

**FOR THE EASTERN DISTRICT OF CALIFORNIA**

9   UNITED STATES OF AMERICA,          CASE NO. CR12-0072-JCC

10                     Plaintiff,          ORDER

11          v.

12   SAMUEL STONE,

13                     Defendant.          **DEATH PENALTY CASE**

14

15          This matter comes before the Court on Defendant's motion for reconsideration of the

16   Magistrate Judge's Order granting in part and denying in part Defendant's motion to compel.

17   (Dkt. No. 118.) Defendant argues that the Magistrate Judge erred as a matter of law, by ordering

18   that the government turn over certain information no later than 120 days before trial, finding that

19   the government did not need to turn over communications between law enforcement agencies,

20   and finding that the government did not need to turn over certain information related to the

21   Bureau of Prison's ADX facility. Having thoroughly considered the parties' briefing and the

22   relevant record, the Court finds oral argument unnecessary and hereby DENIES the motion for

23   the reasons explained herein.

24   **I.      BACKGROUND**

25          The history of the discovery proceedings prior to the August 27, 2013 discovery order of

26   the Honorable Gary Austin, United States Magistrate Judge, is set out in detail in that order. (*See*

ORDER
PAGE - 1

Dkt. No. 106 at 1–3.) Briefly, after extensive discovery proceedings, Defendant filed a new

motion to compel outlining six remaining areas of discovery that the parties disputed:

> 1) *Brady*/*Giglio* material, 2) information regarding the non-preservation of
> audio/video recordings, 3) e-mails and other communications between
> government officials and agencies regarding charging decisions in the case, 4)
> training materials and policies outlining protocols for the preservation of evidence
> at the crime scene, 5) information regarding the assault of Stephen Jackson and
> [the] related prosecution, and 6) materials relating to the Bureau of Prisons
> ("BOP") ADX facility.

(Dkt. No. 106 at 2.)

Judge Austin granted in part and denied in part Defendant's motion. On August 29, 2013,

the parties filed a joint request for an extension of time, (Dkt. No. 108), and Judge Austin set

September 20, 2013, as the latest date by which the parties could file requests for reconsideration

of the discovery order, and September 27, 2013, as the date by which the parties had to file

responses to those requests. (Dkt. No. 109.) On September 20, 2013, Defendant filed a "request

for reconsideration" of the Magistrate Judge's Order, challenging a number of the Judge Austin's

determinations.[1] (Dkt. No. 118.) On October 4, 2013, the government filed a week-late response

to Defendant's motion. (Dkt. No. 122.)[2]

First, defendant argues that the government should turn over certain *Brady*/*Giglio*

information immediately, rather than no later than 120 days before trial, as Judge Austin ordered.

(Dkt. No. 118 at 2–5.) Second, he argues that the communications between the U.S. Attorneys'

Office, UPS Atwater, BOP, and the FBI, regarding the timing of the prosecution, is material and

should be submitted to the Court for *in camera* review to determine whether those

---

[1] Given Defendant's citation to Local Rule 303 and his reference to the standard used by
a District Court when reviewing a Magistrate Judge's ruling, (*see* Dkt. No. 118, at 2), the Court
assumes that the motion is made under Local Rule 303(c). However, in that case, the motion is
incorrectly captioned. *See* E.D. Cal. Local. R. 303(c) (motion for a district court to reconsider a
Magistrate Judge's ruling shall be captioned "Request for Reconsideration by the District Court
of Magistrate Judge's Ruling").

[2] This late response by the government, among others, has already been addressed by the
Court. (*See* Dkt. No. 129 at 3.)

ORDER
PAGE - 2

1   communications are privileged. (*Id.* at 5–7.) Finally, he argues that the requests related to the

2   BOP ADX facility should be granted full, and the government should be forced to turn over all

3   information requested about that facility. (*Id.* at 7–12.)

## II.   DISCUSSION

Upon a timely motion, a District Court Judge may only revisit and set aside those

portions of a Magistrate Judge's nondispositive order that are "clearly erroneous or [] contrary to

law." Fed. R. Civ. P. 72(a); 28 U.S.C. § 636(b)(1)(A). Under the clearly erroneous standard, the

Court must accept the Magistrate Judge's ruling unless it has a "definite and firm conviction that

a mistake has been committed." *Concrete Pipe & Products of Cal., Inc. v. Constr. Laborers*

*Pension Trust for S. Cal.*, 508 U.S. 602, 622 (1993). Review under that standard allows "great

deference," and as long as the magistrate judge's "'account of the evidence is plausible in light

of the evidence viewed in its entirety, [the Court] may not reverse it even though convinced that

had it been sitting as the trier of fact, it would have weighed the evidence differently.'" *Phoenix*

*Engineering and Supply Inc. v. Universal Elec. Co., Inc.*, 104 F.3d 1137, 1141 (9th Cir. 1997)

(quoting *Anderson v. Bessemer*, 470 U.S. 564, 574–74 (1985)).

The Court will review Judge Austin's purely legal conclusions *de novo*. *Morgal v.*

*Maricopa County Bd. Of Sup'rs*, 284 F.R.D. 452, 458 (D. Ariz. 2012) ("'[T]he magistrate

judge's legal conclusions . . . are reviewed *de novo*.'" (quoting *Williams v. United States*, Case

No. CV08-0437-ACK-BMK, 2012 WL 406904, at *3 (D. Haw. 2012))); *see also Fajardo v.*

*McGuinness*, Case No. CV08-0624-OWW-SMS, 2009 WL 981699, at *1 (E.D. Cal. 2009) ("'An

order is contrary to law when it fails to apply or misapplies relevant statutes, case law, or rules of

procedure.'" (quoting *DeFazio v. Wallis*, 459 F.Supp.2d 159, 163 (E.D.N.Y. 2006))), *Hawaii v.*

*Abbott Laboratories, Inc.*, 469 F.Supp.2d 842, 846 (D. Haw. 2006) ("'A decision is 'contrary to

law' if it applies an incorrect legal standard or fails to consider an element of the applicable

standard.'" (quoting *Conant v. McCoffey*, Case No. CV97-0139-FMS, 1998 WL 164946, at *2

(N.D. Cal. 1998))).

A.      *Brady*/*Giglio* **Material: Requests 11, 49, and 50 from Dkt. No. 34**

Defendant requests that the prosecution be ordered give Defendant all *Brady*/*Giglio* material immediately, rather than no later than 120 days before trial, as Judge Austin specified. (Dkt. No. 118, at 3–4.) Defendant argues that "there is no purpose" or "reason" to delay handing over any of the material outlined in the three requests. (*Id.*)

The government's disclosure obligations under *Brady* and *Giglio* require that the disclosures occur at a time when Defendant can "make practical use" of the material. *See United States v. Zuno-Arce*, 44 F.3d 1420, 1427 (9th Cir. 1995); *see also United States v. Guzman*, 89 Fed. App'x 47, 49 (9th Cir. 2004) (disclosure of *Brady* material after a suppression hearing "was cured by the fact that the government's belated disclosure of the amended notes twenty two days before trial" occurred at a time when Defendant could still make use of the disclosure). Here, Defendant has not shown that he will be prejudiced if the information is provided no later than 120 days before trial. Nor has Defendant cited to any authority that supports his position. Defendant's argument that "there is no purpose to the delay," (Dkt. No. 118 at 4–5), is not a legal one, and does not point to a clear factual error by Judge Austin. Thus, Judge Austin's order that the prosecution produce the information no later than 120 days before trial is not clearly erroneous or contrary to law.

B.      **Law Enforcement Communications: Request 9 from Dkt. No. 34**

Defendant argues that Judge Austin's denial of his request for documents, emails, and other writings containing substantive communications about the case between officials at the United States Attorney's Office, USP Atwater, BOP, and the FBI, (Dkt. No. 99 at 10), particularly relating to the timing of the prosecution against Mr. Stone, was clearly erroneous and contrary to law. (Dkt. No. 118 at 5.) Judge Austin denied the request because it was overbroad and immaterial. (Dkt. No. 106 at 13–14.) However, Judge Austin expressly reserved for Defendant the right to submit a new, more narrowly tailored, request. (*Id.* at 13–14.)

Federal Rule of Criminal Procedure 16

does not authorize the discovery or inspection of reports, memoranda, or other internal government documents made by an attorney for the government or other government agent in connection with investigation or prosecuting the case. Nor does [Rule 16] authorize the discovery or inspection of statements made by prospective government witnesses except as provided in 18 U.S.C. § 3500.

Fed. R. Crim. P. 16(a)(2). Moreover, Rule 16(a)(2) is a "rule of discovery, related to the work product doctrine but not synonymous or coextensive with it." *United States v. Fort*, 472 F.3d 1106, 1116 (9th Cir. 2007). In this case, Defendant is requesting documents that clearly fall under Rule 16(a)(2): substantive communications by the prosecutors about the case to other law enforcement agents. Accordingly, even solely under Rule 16 and not under the work-product privilege doctrine, Judge Austin's refusal to compel production of those documents was not clearly erroneous or contrary to law.

In addition, however, the information requested is immaterial to Defendant's actual future dangerousness. Defendant is not actually asking for *evidence* of Defendant's future dangerousness (or lack thereof), but rather for the government's analysis of that evidence; Defendant wants to show that, at some point in the past, the government did not consider Defendant to be dangerous. (*See* Dkt. No. 99, at 11.) Thus, Defendant's argument appears to be that he is entitled not just to material that might impeach the government's witnesses or undermine its evidence in front of a jury, but also to any material that impeaches the government's decision to seek the death penalty against Mr. Stone.[3] However, the government's

---

[3] Apart from materiality concerns, the government's choices about whether to seek the death penalty and how to time the prosecution, barring an unconstitutional motive or unconstitutional delay, rest within its discretion. Mandating that the government turn over documents to allow Defendant to attack a purely discretionary decision raises not only Rule 16(a)(2) compliance problems and work-product privilege issues, but also separation of powers concerns. *See McCleskey v. Kemp*, 481 U.S. 279, 296 (1987) ("[T]he policy considerations behind a prosecutor's traditionally 'wide discretion' suggest the impropriety of our requiring prosecutors to defend their decisions to seek death penalties, 'often years after they were made.'") (footnotes omitted); *see also United States v. Nguyen*, 928 F. Supp. 1525, 1545 (D. Kan. 1996) ("[T]he decision whether to seek the death penalty is firmly within a prosecutor's discretion."); *United States v. Slone*, Case No. CR12-0028-ART-HAI, 2013 WL 5217932, at *2 (E.D. Ky.  Sept. 13, 2013) (given separation of powers concerns, a court "may not direct the process by which the government decides whether a death sentence is appropriate").

analysis of Defendant's future dangerousness is not relevant to his actual future dangerousness.[4] Whatever the government thinks of its own evidence, it is up to the jury to decide what weight to give it. While Defendant correctly argues that "information in the possession of the prosecutor and his investigating officers that is helpful to the defendant, including evidence that might tend to impeach a government witness, must be disclosed prior to trial," (*see* Dkt. No. 118 at 7) (quoting *United States v. Price*, 566 F.3d 900, 903 (9th Cir. 2009), such impeaching and "helpful" information is already covered by other requests and must be disclosed no later than 120 days before trial. (*See, e.g.*, Dkt. No. 106 at 8–10.)

Should Defendant be convicted and the case proceed to the penalty phase, Defendant may present his own arguments, based on the evidence, regarding Defendant's future dangerousness. Moreover, the government is still under an ongoing ethical obligation to turn over mitigating information. *See, e.g.*, *United States v. Acosta*, 357 F. Supp.2d 1228, 1246–47 (D. Nev. 2005) (prosecutors are obligated to timely disclose any information that "tends to . . . mitigate the offense"). However, Defendant is not entitled to the government's communications about why it decided to prosecute him or seek the death penalty. Judge Austin's denial of Defendant's request for communications related to the government's decision of whether to charge Defendant, to seek the death penalty against him, or the timing behind the prosecution is not clearly erroneous or contrary to law, and Defendant cites no law or authority demonstrating otherwise.

**C.   Requests Related to the BOP ADX Facility**

Judge Austin granted or granted in part requests (a), (m), (p), (u), (v),[5] and denied

---

[4] Under Defendant's interpretation of materiality, the government would be entitled to argue that its own analysis of Defendant's future dangerousness, and its corresponding decision to seek the death penalty, is relevant to Defendant's actual future dangerousness. This can plainly not be true, for the same reason that the government's decision to charge a defendant with a crime is not probative of the defendant's guilt.

[5] Judge Austin ordered that the information under request (a) be provided to the Court for *in camera* review, or alternatively produced. (Dkt. No. 106 at 16–17.) Similarly, Judge Austin granted requests (u) and (v). (*Id.* at 19.) Defendant does not articulate any specific objections to

1   requests (h)–(l), (s), (t), (w), which relate to information about the BOP ADX facility. (Dkt.

2   No.106 at 16–19.) Some material satisfying requests (h)–(l) had already been disclosed. (*Id.* at

3   17.) Defendant argues that Judge Austin should have granted all requests in full.

4          First, Defendant appears to be arguing that Judge Austin should not have limited the

5   disclosure of evidence based on his analysis of the evidence's materiality, as "'speculative

6   prediction[s] about the likely materiality of favorable evidence . . . should not limit the disclosure

7   of such evidence, because it is just too difficult to analyze before trial whether particular

8   evidence ultimately will prove to be 'material' after trial.'" (Dkt. No. 118 at 7–8) (quoting

9   *United States v. Olsen*, 704 F.3d 1172, 1183 n.3 (9th Cir. 2013). However, Defendant did not

10  raise that argument or cite to that authority in his motions to compel or his replies, raising it for

11  the first time on a request for reconsideration of Judge Austin's order. Thus, the Court will not

12  consider this argument. *See Greenhow v. Sec'y of Health and Human Servs.*, 863 F.2d 633, 638

13  (9th Cir. 1988) ("[A]llowing parties to litigate fully their case before the magistrate and, if

14  unsuccessful, to change their strategy and present a different theory to the district court would

15  frustrate the purpose of the Magistrates Act.") (overruled on other grounds by *United States v.*

16  *Hardesty*, 977 F.2d 1347, 1348 (9th Cir. 1992)).

17         In the alternative, the Court finds that Defendant is incorrect, and the Court may only

18  order the production of "material" information. Under Rule 16, the government need only permit

19  Defendant to examine evidence if "the item is material to preparing the defense." Fed. R. Crim.

20  P. 16(a)(1)(E)(i); *see also United States v. United States Dist. Court*, 717 F.2d 478, 480 (1983)

21  ("In criminal cases . . . . [m]ateriality is a necessary prerequisite to discovery."). Judge Austin's

22  ruling is not clearly erroneous or contrary to law on that basis. *See id.* at 480, 482 (District

23  Court's ruling that the Freedom of Information Act supersedes the materiality requirement of

24  Federal Rule of Criminal Procedure 16 was clear error, and "[Rule 16], not the Freedom of

25  _____

26  these three rulings, but mentions them in his request for reconsideration. (Dkt. No. 118 at 7.)
    Accordingly, it is not clear to the Court what Defendant's objections to those rulings are.

1   Information Act, is the basic rule that will control [criminal] discovery"); *see also United States*

2   *v. Mandel*, 914 F.2d 1215, 1219 (9th Cir. 1994) ("[O]rdering production by the government

3   without any preliminary showing of materiality is inconsistent with Rule 16.").

4        Moreover, Defendant appears to have misunderstood Judge Austin's order. While

5   Defendant argues that Judge Austin incorrectly applied post-trial, rather than pre-trial, *Brady*

6   materiality standards when considering the discovery requests, (*see* Dkt. No. 118, at 7–8), Judge

7   Austin also analyzed and applied the pre-trial Rule 16 materiality standard: "to show materiality

8   [under Rule 16], the evidence in question must enable the defendant to substantially alter the

9   quantum of proof in his favor . . . or be 'relevant to the development of a possible defense.'"

10   (Dkt. No. 106, at 3–4) (quoting *Mandel*, 914 F.2d 1219) (citation omitted).

11        Defendant also argues that Judge Austin erred by considering the requested evidence

12   item-by-item, rather than collectively. (Dkt. No. 118 at 8.) However, while Judge Austin

13   addressed each of Defendant's requests sequentially, there is nothing in his order that suggests

14   that he ignored context of the case as a whole, and Defendant's other requests for information,

15   when considering the materiality of a given request. Judge Austin groups all BOP ADX requests

16   into a single section and briefly discusses the arguments for and against production collectively,

17   before addressing each request individually. (*See* Dkt. No. 106 at 16–19.) In his analysis of the

18   materiality standards under *Brady* and Rule 16, Judge Austin says nothing about analyzing each

19   piece of evidence independently. (*See* Dkt. No. 106 at 3–7.) Judge Austin's decision to explain

20   his evaluation of each request sequentially does not mean that he considered each request out-of-

21   context of all other evidence provided to and requested by Defendant.

22        Defendant argues that the information covered by requests (h)–(1), (s), and (w) is

23   material, contrary to Judge Austin's findings, for two reasons: first, any evidence suggesting that

24   Defendant can be safely housed in the ADX facility should be considered material to rebut the

25   government's assertion that Defendant will pose a danger in any setting; and second, any

26   evidence suggesting that the BOP is itself complicit in Defendant's alleged history of violence,

by releasing him from isolation at ADX without following the normal "step-down" procedures,

is material to show that he is not morally culpable for the history of violence that the government

intends to use to justify the death penalty. (Dkt. No. 118 at 9–10.) However, "where . . . the

government has shown that complying with the request would be unduly burdensome, it is

incumbent upon [a court] to consider the government interests asserted in light of the materiality

shown." *Mandel*, 914 F. 2d at 1219. Judge Austin's denial of these requests, after weighing of

the government interest in not being required to, for example, manually extract the required

information from each individual inmate's file, (Dkt. No. 80, at 4–6), and the privacy interests of

the inmates, against Defendant's arguments of "materiality" in light of all the evidence thus far

provided and requested by Defendant, was not clearly erroneous or contrary to law.

    Defendant also argues that Judge Austin erred by considering the privacy interests of

inmates in deciding whether information was "material" or not, with respect to requests (h)–(l),

(m), and (p). (Dkt. No. 118 at 8–9.) However, privacy interests are a non-determinative factor

that may be considered in weighing materiality under Rule 16. *See United States v. King*, 928 F.

Supp. 1059, 1062 n.2 (D. Kan. 1996) ("[M]ateriality is a standard that may vary with the

particular relevance of the requested information, the burden in producing it, the national or

privacy interests surrounding it, and its availability from other sources."). Indeed, in the case

Defendant cites in support of his alternative request for a protective order,[6] the Court took the

privacy interests of third-parties into account, noting that "[p]ursuant to a stipulated protective

order, the names and other identifying information was sequestered and never revealed in court

documents." (Dkt. No. 118, at 9.) Defendant does not present any authority suggesting that a

court may not take privacy interests into account when considering the materiality of evidence

under Rule 16.

    In addition, while Defendant cites to a large number of published and unpublished

---

[6] Of course, the case cited by Defendant is a *civil* case, and was governed by different, broader, discovery rules than this criminal case.

ORDER
PAGE - 9

1   decisions and transcripts from previous death penalty cases about requesting information

2   regarding the ADX facility, (*see* Dkt. No. 47, at 45–55), he does not cite to court orders

3   mandating that the government hand over identifying information. In fact, in one of the orders

4   that Defendant cites, the Judge noted that the defendant in that case "do[es] not seek the

5   disclosure of the name of inmates or any identifying information," and only seeks "data in terms

6   of numbers of inmates and length of detention." *United States v. Hammer*, Case No. CR96-0239-

7   JHS, Dkt. No. 1499, at 10 (M.D. Penn. 2012). [7] Mr. Stone, in contrast, not only emphatically

8   requests identifying information, but also requests individualized information about the reason

9   each inmate was committed to ADX—requests broader and more sensitive than those in

10  *Hammer*.

11          Defendant also argues that Judge Austin should have considered granting a protective

12  order rather than denying the requests. (Dkt. No. 118 at 9.) However, because the information

13  requested in this case was not material—given the information already provided to Defendant,

14  the privacy interests implicated in handing the material over, and the burden to the government

15  in producing the information—it was not clearly erroneous or contrary to law for Judge Austin

16  not to issue a protective order to protect the identities of the inmates.

17          Request (t), asking for documents, diagrams and photographs of Range 13 at the ADX

18  facility, raises security concerns. The government has been ordered to produce information about

19  the ADX facility and the procedures for keeping an individual incarcerated there, so that

20  Defendant may argue that the ADX facility allows him to be safely housed. Judge Austin's

21  determination that the requested information is not material, considering the importance of the

22  information to Defendant and the security interests asserted by the government, is not clearly

23  erroneous or contrary to law. *See United States v. Williams*, 791 F.2d 1383, 1387 (9th Cir. 1986)

24  (district court properly found that "the information sought to be discovered was not sufficiently

25

26

----

[7] This unpublished order is available at Dkt. No. 47, Ex. L.

1    material to overcome the government's compelling interests in inmate safety and prison

2    security").

3          Accordingly, the Court finds that Judge Austin's order denying in part Defendant's

4    motion to compel information relating to ADX Florence was not clearly erroneous or contrary to

5    law. The Court has considered all other arguments by Defendant and finds them meritless.

6    **III.    CONCLUSION**

7          For the foregoing reasons, Defendants motion for reconsideration of Judge Austin's

8    order, (Dkt. No. 118), is DENIED.

9          DATED this 5th day of November 2013.

10

11

12

13

14

15                                                        _____

16                                                        John C. Coughenour
                                                          UNITED STATES DISTRICT JUDGE

17

18

19

20

21

22

23

24

25

26

ORDER
PAGE - 11