THE HONORABLE JOHN C. COUGHENOUR

1
2
3
4
5
6
7
8

**IN THE UNITED STATES DISTRICT COURT**

**FOR THE EASTERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| UNITED STATES OF AMERICA, | CASE NO. CR12-0072-JCC |
| Plaintiff, | ORDER DENYING MOTION TO STRIKE AGGRAVATING FACTORS |
| v. | |
| SAMUEL STONE, | |
| Defendant. | **DEATH PENALTY CASE** |

This matter comes before the Court on Defendant's motion to strike certain non-statutory aggravators. (Dkt. No. 111). Having thoroughly considered the parties' briefing and the relevant record, the Court finds oral argument unnecessary and hereby DENIES the motion for the reasons explained herein.

## I.    BACKGROUND

Defendant, Samuel Stone, is accused of murdering Michael Anita, his cellmate at the time of the alleged crime. The government has given notice that it intends to seek the death penalty. (Dkt. No. 3.) In addition to certain statutory aggravating factors, it gave notice of four non-statutory aggravating factors. (*Id.* at 3–4.) Defendant moves to strike three of them:

1) **Pattern of Violent Criminal Conduct**. The defendant, SAMUEL STONE, from at least age fifteen and continuing into his adult life, engaged in a continuing pattern of violent criminal conduct against other individuals,

1   including, but not limited to, the following: threats of violence towards others, the physical beating of others; and the killing of others.

2   2) **Lack of Remorse**. The defendant, SAMUEL STONE, has displayed no remorse for the murder of Michael Anita.

3

4   3) **Future Dangerousness**. The defendant, SAMUEL STONE, poses a continuing danger to others in that he is likely to commit additional acts of violence in any setting against inmates, prison guards and other officials at correctional institutions where he is or will be incarcerated, as evidenced by his past acts of violence and pattern of violence. *See Simmons v. South Carolina*, 512 U.S. 154, 162–164 (1994).

5

6

7   (Dkt. No. 111, at 2.)[1] Specifically, Defendant contends that the "pattern of violent conduct" and

8   "future dangerousness" factors are unconstitutionally vague, were not intended by Congress to

9   be used as non-statutory aggravating factors, and are outweighed by the risk of unfair prejudice;

10  the "future dangerousness" factor is not a rational basis for the imposition of the death penalty, is

11  too unreliable to serve as an aggravating factor, and undermines the beyond a reasonable doubt

12  standard; and the "lack of remorse" factor would violate Defendant's Fifth, Sixth, and Eighth

13  Amendment rights. (Dkt. No. 111, at 3–14.) Defendant also asks that the Court screen any

14  evidence that the government intends to use to support those factors. The government opposes

15  the motion, arguing that none of the bases of Defendant's motion are sufficient to strike the non-

16  statutory factors. (Dkt. No. 124.)

17      Defendant filed a reply, emphasizing his request to require the government to provide a

18  "detailed proffer of the evidence and witnesses it intends to present" with respect to future

19  dangerousness and lack of remorse. (Dkt. No. 147, at 2.) The government moved for leave to file

20  a sur-reply, (Dkt. No. 154), which the Court granted, (Dkt. No. 159.) The government filed a sur-

21  reply. (Dkt. No. 155.)

22  //

23  //

24  _____

25  [1] The government also noted that it would provide victim impact evidence as a non-
26  statutory aggravating factor. (*See* Dkt. No. 3, at 4.) However, Defendant does not move to strike that factor.

1  **II.      DISCUSSION**

2          Under the Eighth Amendment, there are "two different aspects of the capital

3  decisionmaking process: the eligibility decision and the selection decision." *Tuilaepa v.*

4  *California*, 512 U.S. 967, 971 (1994). "To render a defendant eligible for the death penalty in a

5  homicide case, . . . the trier of fact must convict the defendant of murder and find an 'aggravating

6  circumstance' (or its equivalent) at either the guilt or penalty phase." *Id.* at 971–72.

7          The selection decision "determines whether a defendant eligible for the death penalty

8  should in fact receive that sentence." *Id.* at 972. This requires an individualized determination,

9  considering "relevant mitigating evidence of the character and record of the defendant and the

10  circumstances of the crime." *Id.*  While "statutory aggravating circumstances play a

11  constitutionally necessary function" by "circumscrib[ing] the class of persons eligible for the

12  death penalty . . . . [t]he Constitution does not require the jury to ignore other possible

13  aggravating factors in the process of selecting, from among that class, those defendants who will

14  actually be sentenced to death." *Zant v. Stephens*, 462 U.S. 862, 878 (1983). Thus, after the jury

15  finds at least one statutory aggravating circumstance, rendering the defendant eligible for the

16  death penalty, it must still weigh other aggravating and mitigating circumstances, including non-

17  statutory aggravating factors, to determine whether the death penalty should actually be applied

18  in a particular case.

19          Nonstatutory aggravating factors must be relevant, reliable, not overly broad, and not

20  overly vague. The "relevance" and "reliability" requirements mean that the factor must be "of

21  sufficient seriousness in the scale of societal values to be weighed in selecting who is to live or

22  die," and also must be "imbued with a sufficient degree of logical and legal probity to permit the

23  weighing process to produce a reliable outcome." *United States v. Friend*, 92 F. Supp. 2d 534,

24  543 (E.D. Va. 2000). The "overly broad" requirement means that "the circumstance[s] may not

25  apply to every defendant convicted of a murder; it must apply only to a subclass of defendants

26  convicted of murder." *Tuilaepa*, 512 U.S. at 972. Finally, an aggravating factor is

ORDER DENYING MOTION TO STRIKE
AGGRAVATING FACTORS
PAGE - 3

1 unconstitutionally vague when it does not "'channel the sentencer's discretion by clear and

2 objective standards that provide specific and detailed guidance and that make rationally

3 reviewable the process for imposing a sentence of death.'" *Lewis v. Jeffers*, 497 U.S. 764, 774

4 (1990) (quoting *Godfrey v. Georgia*, 446 U.S. 420, 428 (1980)).

5     **A.**     **"Pattern of Violent Criminal Conduct" and "Future Dangerousness" Factors**

6     Defendant moves to strike these two factors on several different grounds. They are

7 addressed in sequence below.

8     **1. Unconstitutional Vagueness**

9     Defendant first argues that the "Pattern of Violent Criminal Conduct" and "Future

10 Dangerousness" factors are unconstitutionally vague. However, apart from the conclusory

11 statement that the factors are unconstitutionally vague, and a discussion of the vagueness

12 standard, Defendant does not actually articulate *why* he thinks the two aggravators should be

13 stricken on this basis. Moreover, he cites only one case in support of his argument, a case where

14 after dismissing the factor, the court granted the government leave to re-draft the "non-statutory

15 factors in . . . 'short declarative sentences.'" *United States v. Johnson*, 136 F. Supp. 2d 553, 561

16 (W.D. Va. 2001). However, in this case, the government has already provided notice of these

17 two non-statutory aggravating factors in short declarative sentences. (*See* Dkt. No. 3, at 3–4).

18     Finally, there is ample authority upholding these factors or factors very similar to them.

19 *See, e.g.*, *Jurek v. Texas*, 428 U.S. 262, 274–76 (1976) (upholding future dangerousness as an

20 aggravating factor); *California v. Ramos*, 463 U.S. 992, 1002–03 (1983) (same); *Simmons v.*

21 *South Carolina*, 512 U.S. 154, 164–65 & n.5 (1994) (same, but requiring notification to the jury

22 when a prisoner will be subject to life without parole if not sentenced to death). *See also*

23 *Tuilaepa*, 512 U.S. at 976–77 (nonstatutory aggravating factor regarding previous criminal

24 history not unconstitutionally vague); *Zant*, 462 U.S. at 888 (during a capital penalty phase

25 proceeding, jury is allowed to "take account of a defendant's prior criminal record in making its

26 sentencing determination"). The Court does not find that either of the two factors "'is . . . too

1  vague to provide any guidance to the sentencer.'" *Arave v. Creech*, 507 U.S. 463, 471 (1993)

2  (quoting *Walton v. Arizona*, 497 U.S. 639, 654 (1990)). Accordingly, the Court declines to strike

3  it.

### 2. Congressional Intent

5  Defendant argues that Congress did not intend for Defendant's future dangerousness and

6  pattern of violent criminal conduct to be considered as aggravating factors, as they are not among

7  the aggravating factors specifically enumerated in the Federal Death Penalty Act. (Dkt. No. 111,

8  at 3.) However, the statute states that, in addition to the listed aggravating factors, the "jury . . .

9  may consider whether any other aggravating factor for which notice has been given exists." 18

10 U.S.C. § 3592. Defendant does not address this language in his motion papers, but it appears to

11 invalidate his Congressional intent argument.

12  As a part of this argument, Defendant argues that the inclusion of future dangerousness

13 and a pattern of violent conduct "is merely piling on and may actually constitute 'double

14 counting' of aggravating factors." (Dkt. No. 111, at 4.) However, while Defendant contends that

15 the statute already contains "several specific aggravating factors directly related to" the notion of

16 future dangerousness, (Dkt. No. 111, at 4), he does not state *which* statutory factors are

17 supposedly duplicative of the nonstatutory factors, or argue *how* they are duplicative. He appears

18 to be arguing only that, under some circumstances, the "future dangerousness" factor might be

19 proven in a manner identical to one or more of the statutory aggravating factors, but he does not

20 say that this case involves such an instance. Nor does Defendant cite to any authority supporting

21 his argument that *these particular* nonstatutory factors are duplicative of any other factor.

22 Moreover, other courts have rejected this argument. *See United States v. Allen*, 247 F.3d 741,

23 789 (8th Cir. 2001) (disagreeing with defendant's argument that the FDPA precludes using prior

24 criminal acts as a nonstatutory aggravating factor because six of the sixteen aggravating factors

25 in the FDPA are based on prior criminal acts), *vacated on other grounds*, 536 U.S. 953 (2002).

26  The Court declines to strike these factors on the basis of Congressional intent.

ORDER DENYING MOTION TO STRIKE
AGGRAVATING FACTORS
PAGE - 5

### 3. Rational Basis of Future Dangerousness

Defendant argues that, given the security of the ADX "supermax" facility, there is no rational basis for submitting the future dangerousness factor to a jury. He points to an order requiring that the government, in its revised death notices, "set forth reasons why the government's incarceration facilities and prison-security protocols would be insufficient to neutralize defendants' potential for harm." *United States v. Diaz*, Case No. CR05-0167-WHA, 2007 WL 656831, at *23 (N.D. Cal. Feb. 28, 2007).

While the Court understands the *Diaz* court's concerns, the government has mitigated those concerns in this case by discussing its arguments in favor of a finding of future dangerousness. (*See* Dkt. No. 124, at 20–21.) In any case, given the widespread and longstanding existence of "supermax" facilities, and the fact that courts have routinely allowed future dangerousness as a factor even in the face of those facilities' existence, the Court does not believe it can strike the future dangerousness factor on this basis. In *Simmons*, the Supreme Court held that future dangerousness could be used as an aggravating factor even though the defendant in that case would, if not sentenced to death, be subject to a life sentence without the possibility of parole. *Simmons*, 512 U.S. at 165 n.5. Similar logic, concerning the possibility of safely housing the defendant, governs here. *See United States v. Hager*, 721 F.3d 167, 199–200 (4th Cir. 2013) (Defendant's argument that his future dangerousness should be mitigated by the fact that he would be incarcerated in a maximum security facility could not be used to strike future dangerousness factor, but could be presented to a jury).

### 4. Reliability of Future Dangerousness

Defendant argues that the "future dangerousness" factor is unreliable, as a large number of individuals have been sentenced to death on the basis of "future dangerousness," only to subsequently behave as well or better than other prisoners. (*See* Dkt. No. 111, at 6–7). However, the Supreme Court has foreclosed that argument. *See Barefoot v. Estelle*, 463 U.S. 880, 896–903 (1983) (explaining why expert psychiatric testimony regarding future dangerousness may be

1  submitted to a jury, even taking into consideration the arguments about scientific reliability of

2  that testimony and the factor as a whole). The Supreme Court has repeatedly allowed the

3  submission of the future dangerousness factor to the jury during the penalty phase. "Whether

4  contemporary values dictate a different answer today is for the Supreme Court to decide; the

5  Eighth Amendment does not authorize this court to overrule Supreme Court precedent 'even

6  where subsequent decisions or factual developments may appear to have significantly

7  undermined the rationale for [an] earlier holding.'" *United States v. Mitchell*, 502 F.3d 931, 982

8  (9th Cir. 2007) (quoting *Roper v. Simmons*, 543 U.S. 551, 594 (2005) (O'Connor, J.,

9  dissenting)).

### 5.   Future Dangerousness and Beyond a Reasonable Doubt

11  Defendant also argues that the future dangerousness factor undermines the beyond a

12  reasonable doubt standard: the prosecution intends to prove that it is "likely" that Defendant will

13  commit future acts of violence, but the prosecution must prove beyond a reasonable doubt that

14  Defendant is a future danger. (Dkt. No. 111, at 7–8.) Once again, the Supreme Court has ruled on

15  this issue, upholding a future dangerousness factor that asked the jury to consider whether the

16  evidence proved beyond a reasonable doubt that there was "a probability that the defendant

17  would commit criminal acts of violence that would constitute a continuing threat to society."

18  *Jurek*, 428 U.S. at 267–68. The Court may not rule in a manner contrary to binding Supreme

19  Court precedent, and Defendant offers no arguments for how the *Jurek* factor is materially

20  different from the factor in this case.

### 6.   "Is Likely To" Commit Future Crimes and Heightened Reliability

22  Defendant argues that the future dangerousness factor's allegation that Mr. Stone "is

23  likely to" commit future crimes grants the jury "open-ended" discretion, undermining the

24  factor's reliability. However, as noted above, the Supreme Court has repeatedly upheld future

25  dangerousness as an aggravating factor, and has not held that it grants the jury open-ended

26  discretion, or is unconstitutionally vague. *See Estelle*, 463 U.S. at 884; *Simmons*, 512 U.S. at

1   165 n.5; *Jurek*, 428 U.S. at 274–76; *Ramos*, 463 U.S. at 1002–03.

2   **7.   Future Dangerousness and Pattern of Violent Conduct, and Unfair**
3   **Prejudice**

4   Defendant argues that the future dangerousness factor and the pattern of violent conduct

5   factor should be stricken because of the risk of unfair prejudice.

6   This argument echoes Defendant's previous arguments, as it relies on finding that the

7   evidence is of insufficient probative value (and thus is insufficiently "reliable") to justify the risk

8   of unfair prejudice. The "danger of unfair prejudice" test relates to the exclusion of information

9   presented in support of a factor. *See* 18 U.S.C. § 3593(c) ("[I]nformation may be excluded if its

10  probative weight is outweighed by the danger of creating unfair prejudice."). Here, the Court

11  cannot rule that the risk of prejudice inherent in all information related to these nonstatutory

12  factors must result in the factors being stricken, when the Supreme Court has repeatedly upheld

13  similar factors in the past. *See Estelle*, 463 U.S. at 884 (future dangerousness); *Simmons*, 512

14  U.S. at 165 n.5 (same); *Jurek*, 428 U.S. at 274–76 (same); *Ramos*, 463 U.S. at 1002–03 (same);

15  *Tuilaepa*, 512 U.S. at 976–77 (prior criminal history); *Zant*, 462 U.S. at 888 ("Nothing in the

16  Constitution prohibits a trial judge from instructing a jury that it would be appropriate to take

17  account of a defendant's prior criminal record in making its sentencing determination.").

18  **B.   "Lack of Remorse" Factor**

19  Defendant argues that the "lack of remorse" factor violates his Fifth Amendment right to

20  remain silent and his Sixth Amendment right to trial because it imposes a penalty on the exercise

21  of those rights. He also argues that it is inherently unreliable, and so violates the Eighth

22  Amendment. Specifically, Defendant argues that the "lack of remorse" factor is *per se*

23  problematic: unless Defendant waives his right to remain silent, apologizing for a crime for

24  which he has no obligation to apologize, he will be punished. Accordingly, Defendant argues

25  that the bare assertion that he has not displayed remorse is sufficient.

26  The Supreme Court has suggested that "lack of remorse" is an acceptable aggravating

1   factor. *See Zant v. Stephens*, 462 U.S. 862, 885 n.22 (1983) ("'Any lawful evidence which tends

2   to show the motive of the defendant, his lack of remorse, his general moral character, and his

3   predisposition to commit other crimes is admissible in aggravation.'" (quoting *Fair v. State*, 268

4   S.E.2d 316, 321 (Ga. 1980))).

5      Defendant does not point to any cases where lack of remorse was found to be *per se*

6   unacceptable. Instead, Defendant points to cases where the particular evidence presented by the

7   prosecution was insufficient to prove lack of remorse. *See United States v. Roman*, 371 F. Supp.

8   2d 36, 50–51 (D.P.R. 2005) (sufficient evidence of lack of remorse found as to one defendant,

9   based on a shopping spree and a "demonstration of his sharpshooting technique in prison," but

10  insufficient evidence found as to a defendant who merely "slammed his weapon on the pavement

11  in disgust following his attack on the victim"); *United States v. Davis*, 912 F. Supp. 938, 946

12  (E.D. La. 1996) ("Without passing on whether lack of remorse is *per se* an inappropriate

13  independent factor to consider, the court finds it inappropriate in this case. The only information

14  proposed to sustain the factor is DAVIS' alleged jubilation in learning that Kim Groves had been

15  killed."); *United States v. Walker*, 910 F. Supp. 837, 855 (N.D.N.Y. 1995) (statement by

16  defendant that, while incarcerated, he said that "he and Walter killed the 'motherf***er'"

17  insufficient to prove lack of remorse).

18     In this case, the government suggests that it will use Defendant's actions and some of his

19  statements admitting to the crime to prove lack of remorse. Specifically, the government intends

20  to argue that the combination of: 1) the brutal method of the alleged murder, 2) Defendant's

21  statements that nobody controls him and that Mr. Anita needed killing, and 3) certain other

22  statements to the Bureau of Prisons employees, shows that he lacks remorse. (Dkt. No. 124, at

23  29–30.) This is qualitatively and quantitatively different from the alleged actions in the cases

24  cited by Defendant where "lack of remorse" could not be submitted to the jury.

25     Accordingly, this Court declines to strike lack of remorse. *See United States v. Nguyen*,

26  928 F. Supp. 1525, 1541–42 (D. Kan. 1996) (declining to strike lack of remorse, while

cautioning the government that it must support this factor with "more than mere silence"). The Court will not reach the question of what, precisely, the government can and cannot introduce to prove this factor at this time. Defendant's arguments regarding the admissibility of various types of evidence to prove his alleged lack of remorse are not properly raised in a motion to strike.

### C.      Screen Evidence Regarding Aggravating Factors

Finally, Defendant asks "that the Court require the government to provide prior to trial a detailed proffer of the evidence and witnesses it intends to present to the sentencing jury with respect to future dangerousness in the prison setting and lack of remorse that does not improperly implicate Mr. Stone's Fifth Amendment rights." (Dkt. No. 147, at 2.) Such a screening process is not a proper remedy in a motion to strike aggravating factors. To the extent Defendant is entitled to information held by the government, he may obtain it using the discovery process or a motion for a bill of particulars. In any case, Defendant does not point to any authority permitting the Court to screen all the evidence the government intends to present during the penalty phase. While the Supreme Court has not directly ruled on this issue,[2] the courts that have addressed this issue have held that there is no such right. *See, e.g.*, *United States v. LeCroy*, 441 F.3d 914, 929 (11th Cir. 2006) (the government "'is not required to provide specific evidence in its [§ 3593] notice of intent'" (quoting *United States v. Battle*, 173 F.3d 1343, 1347 (11th Cir. 1999))); *United States v. Higgs*, 353 F.3d 281, 325 (4th Cir. 2003) ("The FDPA and the Constitution require that the defendant receive adequate notice of the aggravating factor . . . not notice of the specific evidence that will be used to support it.").

---

[2] In *Gray v. Netherland*, the Supreme Court held that requiring the government to provide notice of the evidence it intended to present in support of the aggravating factors at the penalty phase of a death penalty prosecution would constitute a "new constitutional rule" under *Teague v. Lane*, and that it does not fall into one of *Teague*'s exceptions. *Gray v. Netherland*, 518 U.S. 152, 169–71 (1996). However, the Supreme Court has not squarely addressed the existence of such a rule. *Id.* at 168–69.

1    **III.    CONCLUSION**

2          For the foregoing reasons, Defendant's motion to strike certain nonstatutory aggravating

3    factors, (Dkt. No. 111), is DENIED.

4          DATED this 20th day of December 2013.

5

6

7

8

9

10

11                                                    John C. Coughenour
                                                      UNITED STATES DISTRICT JUDGE
12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

ORDER DENYING MOTION TO STRIKE
AGGRAVATING FACTORS
PAGE - 11