THE HONORABLE JOHN C. COUGHENOUR

# IN THE UNITED STATES DISTRICT COURT

## FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>SAMUEL STONE,<br><br>Defendant. | CASE NO. CR12-0072-JCC-GSA<br><br>ORDER DENYING MOTIONS TO FIND FEDERAL DEATH PENALTY UNCONSTITUTIONAL<br><br><br>**DEATH PENALTY CASE** |

This matter comes before the Court on Defendant's motions to declare the federal death penalty unconstitutional based on *Ring v. Arizona*, 536 U.S. 584 (2002), (Dkt. No. 114), and the Fifth and Eighth Amendments. (Dkt. No. 115.) Having thoroughly considered the parties' briefing and the relevant record, the Court finds oral argument unnecessary and hereby DENIES the motions for the reasons explained herein.

## I.      BACKGROUND

Defendant Samuel Stone was indicted for the murder of Michael Anita on March 22, 2012. (Dkt. No. 1.) The indictment contains a "Notice of Special Findings," alleging certain facts, such as Mr. Stone's age, his *mens rea* during the alleged crime, his previous convictions, the heinousness of the crime, and the presence of premeditation, that render him eligible for the death penalty. (Dkt. No. 1, at 2–3.) The same day, the government filed a notice of intent to seek

the death penalty, listing statutory aggravating factors that echo the facts listed in the indictment's notice of special findings, (Dkt. No. 3, at 2–3), as well as non-statutory aggravating factors that were not listed in the indictment. (*Id.* at 3–4.)

On September 9, 2013, Mr. Stone filed two motions to declare the federal death penalty unconstitutional. In one, he argues that the federal death penalty scheme violates the Constitution by failing to specify that statutory aggravating factors must be submitted to the grand jury, (Dkt. No. 114), or alternatively that the government violated the Constitution by actually submitting those factors to the grand jury. In the other, he argues that the federal death penalty scheme violates the Fifth and Eighth Amendments to the United States Constitution. (Dkt. No. 115.) The government filed a consolidated response to both motions, (Dkt. No. 125), Mr. Stone filed a consolidated reply, (Dkt. No. 146), and, after the Court granted leave, (Dkt. No. 159), the government filed a sur-reply. (Dkt. No. 170.)

## II.    DISCUSSION

"A facial challenge to a legislative Act is, of course, the most difficult challenge to mount successfully, since the challenger must establish that no set of circumstances exists under which the Act would be valid." *United States v. Salerno*, 481 U.S. 739, 745 (1987). A party seeking to demonstrate that an act of Congress is facially unconstitutional must "shoulder [a] heavy burden," as "[t]he fact that the . . . Act might operate unconstitutionally under some conceivable set of circumstances is insufficient to render it wholly invalid," outside of certain First Amendment challenges. *Id.*

In this case, Mr. Stone argues that the federal death penalty scheme is unconstitutional on a number of separate grounds, including: 1) the government's practice of submitting statutory aggravating factors to the grand jury is unconstitutional; 2) the government's failure to submit the non-statutory aggravating factors to the grand jury is unconstitutional; 3) the government should have informed the grand jury that the "notice of special findings" might result in the defendant being subjected to the death penalty; 4) the relaxed evidentiary rules during the

ORDER DENYING MOTIONS TO FIND
FEDERAL DEATH PENALTY
UNCONSTITUTIONAL
PAGE - 2

penalty phase violate Defendant's due process rights; 5) the FDPA results in an arbitrary and capricious application of the death penalty based on an analysis of past death penalty prosecutions; 6) the non-statutory aggravating factors do not sufficiently limit and guide the discretion of the jury; 7) the non-statutory aggravating factors are an unconstitutional delegation of legislative authority to the executive branch; 8) non-statutory aggravating factors, in general, violate the *Ex Post Facto* clause; 9) the use of non-statutory aggravating factors is foreclosed by statutory language in the FDPA; 10) the FDPA violates the Constitution, as there is no mechanism for proportionality review; 11) the death penalty under all circumstances is cruel and unusual punishment; and 12) lethal injection constitutes cruel and unusual punishment.

The Court will not address any arguments related to the government's delay in prosecuting the case, (Dkt. No. 146, at 9–10), as the Court has already scheduled a hearing related to those issues. (*See* Dkt. No. 189, at 8–9.) Similarly, the Court will not address the parties' arguments regarding the scope of the mitigation evidence that should be allowed during the penalty phase. A motion to find the death penalty unconstitutional is not the proper instrument to ask the Court to address that issue.

## A.  *Ring v. Arizona* and the FDPA's Constitutionality

The enumerated aggravating factors in the Federal Death Penalty Act ("FDPA") operate as the functional equivalent of an element of a greater offense, and must be found by a jury, rather than a judge, as they allow the jury to impose the death penalty. *See Ring v. Arizona*, 536 U.S. 584, 609 (2002) ("Arizona's enumerated aggravating factors operate as 'the functional equivalent of an element of a greater offense.'" (quoting *Apprendi v. New Jersey*, 530 U.S. 466, 494 n.19 (2000)). Generally, all elements of a crime must be submitted to the grand jury for indictment. *Jones v. United States*, 526 U.S. 227, 251-252 (1999) (each element of each crime "must be charged by indictment, proven beyond a reasonable doubt, and submitted to a jury for its verdict"). Accordingly, the government must submit at least one statutory aggravating factor to the grand jury if the government wishes to pursue the death penalty. *See, e.g.*, *United States v.*

1    *Allen*, 406 F.3d 940, 943 (8th Cir. 2005) ("The Fifth Amendment requires at least one statutory

2    aggravating factor and the *mens rea* requirement to be found by the grand jury and charged in the

3    indictment."). Here, the government has submitted a "notice of special findings" containing

4    every statutory aggravating factor to the grand jury for consideration. The issue is whether the

5    government's submission of the "notice of special findings" to the grand jury, in an attempt to

6    comply with *Ring* and the Indictment Clause, is unconstitutional.

7          While the Ninth Circuit has not specifically addressed each argument raised by

8    Defendant[1] in this case, it has nonetheless held that as long as the "indictment *did* charge

9    statutory aggravating factors upon which the government proceeded," the Constitution has not

10   been violated. *United States v. Mitchell*, 502 F.3d 931, 979 (9th Cir. 2007). Moreover, every

11   court that has addressed the argument raised by Defendant has found it wanting. *See, e.g.*, *United*

12   *States v. Robinson*, 367 F.3d 278, 290 (5th Cir. 2004) ("Although [the defendant] is correct to

13   point out that nothing in the FDPA requires prosecutors to charge aggravating factors in an

14   indictment, he fails to note that there is nothing in that law prohibiting such a charge."); *United*

15   *States v. Sampson*, 486 F.3d 13, 21–23 (1st Cir. 2007) (contention that "there is a conflict

16   between the FDPA and *Ring*, and that curing the problem would require rewriting of the statute,

17   which is a legislative function," is unpersuasive); *United States v. LeCroy*, 441 F.3d 914, 921

18   (11th Cir. 2006) ("[N]othing in the [FDPA] forbids, or is inconsistent with, prosecutors' taking

19   of the additional step of including the statutory aggravating factors in the indictment and

20   submitting same to the grand jury."); *United States v. Brown*, 441 F.3d 1330, 1367 (11th Cir.

21   2006) ("The FDPA is not facially unconstitutional. Nothing prohibits the government from

22   presenting aggravating factors to a grand jury and then . . . charging those aggravating factors in

23   _____

24   [1] In contesting the validity of the submission of the "notice of special findings" to the

25   grand jury, Defendant argues that the government's practice violates the separation of powers
     between the legislature and the executive branches, the non-delegation doctrine, the requirement

26   that the judiciary not salvage unconstitutional statutes as laid out in *United States v. Jackson*, 390
     U.S. 570 (1968), and also that a grand jury does not have the authority to issue special findings.

ORDER DENYING MOTIONS TO FIND
FEDERAL DEATH PENALTY
UNCONSTITUTIONAL
PAGE - 4

1  the indictment."); *United States v. Allen*, 406 F.3d 940, 949 (8th Cir. 2005) (FDPA not

2  unconstitutional after *Ring* even though it requires that the government submit the statutory

3  aggravating factors in a notice of intent, as long as the government also submits the factors "to

4  the grand jury for inclusion in the indictment"); *United States v. Barnette*, 390 F.3d 775, 789 (4th

5  Cir. 2004) (nothing in the FDPA "restricts the government from submitting aggravating factors

6  to the grand jury"), *vacated on other grounds* 546 U.S. 803 (2005).

7      The Court finds that the government's submission of statutory aggravating factors to the

8  grand jury does not violate the Constitution, and follows the logic of the numerous opinions

9  upholding the challenged practice.

10     **B.    Non-Statutory Aggravating Factors in the Indictment**

11     Defendant argues that the non-statutory aggravating factors should have been submitted

12  to the grand jury for consideration along with the statutory aggravating factors. However, this

13  argument has also been directly foreclosed by the Ninth Circuit. "[T]here is nothing to suggest"

14  that the government's failure "to present and charge non-statutory aggravating factors" to the

15  grand jury is constitutionally required. *Mitchell*, 502 F.3d at 979. Because "[a] non-statutory

16  aggravating factor by itself cannot trigger death eligibility," *id.*, it need not be presented to the

17  grand jury.

18     **C.    Informing the Grand Jury that Special Findings Could Result in a Death
19            Sentence**

20     There are two criteria by which the sufficiency of an indictment is to be measured:

21         first, whether the indictment 'contains the elements of the offense intended to be
22         charged, and sufficiently apprises the defendant of what he must be prepared to
           meet' and, secondly, 'in case any other proceedings are taken against him for a
           similar offense whether the record shows with accuracy to what extent he may
23         plead a former acquittal or conviction.'

24  *Russell v. United* States, 369 U.S. 749, 763–64 (1962) (quoting *Cochran v. United States*, 157

25  U.S. 286, 290 (1895)). The indictment in this case satisfies those two requirements.

26     Defendant contends that the indictment should also inform the grand jury that their

ORDER DENYING MOTIONS TO FIND
FEDERAL DEATH PENALTY
UNCONSTITUTIONAL
PAGE - 5

1   special findings will make the defendant eligible for the death penalty. However, he cites no

2   authority demonstrating that there exists such an obligation, and the Court has not found any.

3   "[I]t is clear that so long as the defendant is sufficiently notified of the charges against him, the

4   indictment need not set forth the ultimate punishment sought for the offenses charged in the

5   indictment." *United States v. Natson*, 444 F. Supp. 2d 1296, 1305 (M.D. Ga. 2006). *See also*

6   *United States v. Haynes*, 269 F. Supp. 2d 970, 981 (W.D. Tenn. 2003) ("The grand jury's role is

7   not to decide whether probable cause supports the imposition of a particular *sentence* against a

8   charged individual; rather, the grand jury check on prosecutorial powers stems from its

9   independent *factual* determination of the existence of probable cause for the essential elements

10  of the charged offense."); *United States v. Matthews*, 246 F. Supp. 2d 137, 147 (N.D.N.Y. 2002)

11  ("Grand juries to not make findings or recommendations concerning punishment or sentencing

12  and such considerations should not influence their decision. It is for the petit jury to make that

13  determination.").

14         Similarly, to the extent Defendant argues that the grand jury was obligated to find that all

15  aggravating factors outweighed all mitigating factors in order for the government to pursue a

16  death sentence, he is incorrect.

17         [I]t makes no sense to speak of the weighing process mandated by 18 U.S.C. §
18         3593(e) as an elemental fact for which a grand jury must find probable cause. In
           the words of the statute, it is a 'consideration.' 18 U.S.C. § 3593(e),—that is, the
19         lens through which the jury must focus the facts that it has found to produce an
           individualized determination

20  regarding whether the Defendant should be sentenced to death. *United States v. Purkey*, 428 F.3d

21  738, 750 (8th Cir. 2005). Moreover, Defendant points to no authority holding otherwise.

22         Accordingly, the Constitution was not violated when the government did not inform the

23  grand jury that the special findings might render Defendant eligible for the death penalty. Nor

24  was it violated when the grand jury did not weigh all potential mitigating factors against the

25  submitted aggravating factors.

26  //

ORDER DENYING MOTIONS TO FIND
FEDERAL DEATH PENALTY
UNCONSTITUTIONAL
PAGE - 6

1    **D.      Relaxed Evidentiary Rules During the Penalty Phase**

2         During the penalty phase of a death penalty prosecution, "information may be presented

3    as to any matter relevant to the sentence," and such information "is admissible regardless of its

4    admissibility under the rules governing admission of evidence at criminal trials," unless the

5    probative value of the information is outweighed by the danger of creating unfair prejudice. 18

6    U.S.C. § 3593(c). Defendant, in both of his motions, argues that the fact that the FDPA allows

7    for the admission of information during the penalty phase that would not be admissible under the

8    Federal Rules of Evidence violates the Constitution, by diminishing the reliability of the penalty

9    phase and violating the Confrontation clause.

10        However, "[w]hile capital punishment demands increased reliability, 'the Supreme Court

11   has . . . made clear that in order to achieve such heightened reliability, *more* evidence, not less,

12   should be admitted on the presence of aggravating and mitigating factors." *Mitchell*, 502 F.3d at

13   979–80 (quoting *United States v. Fell*, 360 F.3d 135, 143 (2d Cir. 2004)). Accordingly, as the

14   Ninth Circuit has noted, the fact that the FDPA allows the district judge to exclude evidence if its

15   probative value is outweighed by the danger of creating unfair prejudice "provides a

16   constitutionally sufficient procedural safeguard for evidentiary reliability." *Id.*

17    **E.      Whether the FDPA Results in the Arbitrary and Capricious Application of
              the Death Penalty**
18

19        "[T]o satisfy the Eighth and Fourteenth Amendments, a capital sentencing scheme must

20   'suitably direct and limit' the sentencer's discretion 'so as to minimize the risk of wholly

21   arbitrary and capricious action.'" *Arave v. Creech*, 507 U.S. 463, 470 (1993) (quoting *Lewis v.*

22   *Jeffers*, 497 U.S. 764, 774 (1990)). The Supreme Court's death penalty jurisprudence requires

23   that a death penalty scheme "(1) rationally narrow the class of death-eligible defendants; and (2)

24   permit a jury to render a reasoned, individualized sentencing determination based on a death-

25   eligible defendant's record, personal characteristics, and the circumstances of his crime." *Kansas*

26   *v. Marsh*, 548 U.S. 163, 173–74 (2006).

ORDER DENYING MOTIONS TO FIND
FEDERAL DEATH PENALTY
UNCONSTITUTIONAL
PAGE - 7

1   Defendant does not point to a specific portion of the FDPA that renders it arbitrary and

2   capricious, but contends that, based on his analysis of past prosecutions under the FDPA, it is

3   nonetheless. Defendant estimates that "25 percent of factual first-degree murders by people 18

4   years of age or higher in California, or nationally could be prosecuted under federal law as death-

5   authorized cases." (Dkt. No. 115, Ex. A, at 3.) He also submits evidence regarding the frequency

6   of federal death penalty prosecutions since 1988, along with some selected facts behind the

7   crimes in those prosecutions, including the defendant's race, the race and gender of the victim,

8   whether the death penalty authorization was withdrawn, the state in which the case was

9   prosecuted, whether the defendant was convicted after a plea bargain or at trial, and the

10  defendant's sentence if convicted. (Dkt. No. 115, Ex. B.) Defendant argues that, despite the fact

11  that each crime was terrible, "for indiscernible reasons, some defendants were sentenced to

12  death, while [sic] overwhelming majority were not." (Dkt. No. 115, at 38.)

13  "That federal executions are rare, however, does not render the FDPA unconstitutional."

14  *Mitchell*, 502 F.3d at 983 (footnote omitted). "The relevant question—whether capital

15  punishment in the abstract violates the Eighth Amendment—was answered in the negative by

16  *Gregg*." *Id.* Indeed, in the context of the death penalty,

17      [t]he sentencing decision requires the individual jurors to focus their collective
18      judgment on the unique characteristics of a particular criminal defendant. It is not
        surprising that such collective judgments often are difficult to explain. But the
        inherent lack of lack of predictability of jury decisions does not justify their
19      condemnation. On the contrary, it is the jury's function to make the difficult and
        uniquely human judgments that defy codification and that 'buil[d] discretion,
20      equity, and flexibility into a legal system.'

21  *McCleskey v. Kemp*, 481 U.S. 279, 311 (1987) (quoting H. Kalven & H. Zeisel, The American

22  Jury 498 (1966)). "The Constitution is not offended by inconsistency in results based on the

23  objective circumstances of the crime." *Id.* at 307 n.28. Defendant's contention that *McCleskey* is,

24  along with *Dred Scott*, *Plessy*, and *Korematsu,* "one of the least defensible decisions in the

25  history of the Republic," (Dkt. No. 147, at 7 n.23), even if true, does not allow the Court to

26  ignore *McCleskey* when, as Defendant concedes, it is "the law of the land." (*Id.*)

ORDER DENYING MOTIONS TO FIND
FEDERAL DEATH PENALTY
UNCONSTITUTIONAL
PAGE - 8

As Defendant notes, "the government offers no *evidence* that objective circumstances of the crimes played any role in determining the inconsistencies between the many thousands of death-eligible cases in which the United States" does not pursue a death sentence and the few in which it does. (Dkt. No. 147, at 16.) But in a facial attack on the constitutionality of the federal death penalty, the burden is on Defendant, not the government, and Defendant has not proved that "no set of circumstances exists under which the Act would be valid," *Salerno*, 481 U.S. at 745, in light of *McCleskey*.

**F.      Non-Statutory Aggravating Factors, Limiting and Guiding the Discretion of the Jury**

During the penalty phase, to determine whether the death penalty should be applied, the factfinder may consider not only whether any statutory aggravating factors exist, but also "whether any other aggravating factor for which notice has been given exists." 18 U.S.C. § 3592(c). The factfinder then weighs all statutory and non-statutory aggravating factors against all mitigating factors found to exist, to determine whether the aggravating factors outweigh the mitigating factors to such a degree that a death sentence is justified. 18 U.S.C. § 3593(e). The issue is whether the FDPA is unconstitutional because it "provides no guidance to prosecutors in determining how to define or select non-statutory aggravating factors in a particular case," and those factors may accordingly not be sufficiently "clear and objective" to pass constitutional muster. (Dkt. No. 115, at 40.).

The submission of non-statutory aggravating factors to the jury is constrained in four ways.

First, the statute limits the scope of aggravating factors to those for which prior notice has been given by the prosecution. . . . Second, the death penalty jurisprudence devised by the Supreme Court guides the prosecution in formulating non-statutory aggravating factors. For example, due process requires that information submitted as aggravating genuinely narrow the class of persons eligible for the death penalty. . . . Third, the district court functions as a gatekeeper to limit the admission of useless and impermissibly prejudicial information. . . . And fourth, the requirement that the jury find at least one

statutory aggravating factor beyond a reasonable doubt before it may consider the non-statutory factors further limits the delegated authority.

*United States v. Jones*, 132 F.3d 232, 239–40 (5th Cir. 1998) (citations and footnote omitted). Accordingly, because each non-statutory aggravating factor must "genuinely narrow" the class of persons eligible for the death penalty, Defendant is incorrect that the government's ability to define and chose non-statutory aggravating factors exposes him to factors that do not sufficiently curtail the factfinder's discretion. *See Zant v. Stephens*, 462 U.S. 862, 877 (1983) ("To avoid [constitutional problems], an aggravating circumstance must genuinely narrow the class of persons eligible for the death penalty and must reasonably justify the imposition of a more severe sentence on the defendant compared to others found guilty of murder."). Indeed, Defendant's argument would render unconstitutional the use of non-statutory aggravating factors in any death penalty scheme, despite the fact that the Supreme Court has upheld their use. *Id.* at 878 (while statutory aggravating factors are constitutionally necessary, "the Constitution does not require the jury to ignore other possible aggravating factors" during the penalty phase).

### G.      Non-Statutory Aggravating Factors and the Non-Delegation Doctrine

"All legislative Powers herein granted shall be vested in a Congress of the United States." U.S. Const., Art. I § 1. "Congress generally cannot delegate its legislative power to another Branch." *Mistretta v. United States*, 488 U.S. 361, 372 (1989). "So long as Congress 'shall lay down by legislative act an intelligible principle to which the person or body authorized to [exercise the delegated authority] is directed to conform, such legislative action is not a forbidden delegation of legislative power.'" *Id.* (quoting *J.W. Hampton, Jr., & Co. v. United States*, 276 U.S. 394, 409 (1928)). Here, Defendant argues that allowing the prosecutor to determine which non-statutory aggravating factors to submit to the jury for consideration violates the non-delegation doctrine. (Dkt. No. 115, at 41). He states that "[d]efining what constitutes criminal conduct and setting appropriate sanctions for that conduct is a quintessential legislative

1  decision," and that, accordingly, "the authorization to define non-statutory aggravating factors is

2  clearly a delegation of power."[2] (*Id.*)

3        "Assuming (without deciding) that [the government's ability to pursue non-statutory

4  aggravating factors under the FDPA] even constitutes a delegation of legislative power, it would

5  be 'permissible so long as there are intelligible principles by which to exercise the delegated

6  authority.'" *Mitchell*, 502 F.3d at 978 (quoting *United States v. Jensen*, 425 F.3d 698, 707 (9th

7  Cir. 2005)). In *Mitchell*, the Ninth Circuit held that the constitutional limitations on the use of

8  aggravating factors articulated by the Supreme Court constitute such an intelligible principle. *Id.*

9  at 979.

10        **H.        Non-Statutory Aggravating Factors and *Ex Post Facto* Laws**

11        "The Constitution forbids the passage of *ex post facto laws*." *Peugh v. U.S.*, __ U.S. __,

12  133 S. Ct. 2072, 2077 (2013). "The Supreme Court has generally classified laws that violate the

13  Ex Post Facto Clause into four categories." *Gentry v. Sinclair*, 705 F.3d 884, 908 (9th Cir. 2012).

14  A law may violate the *Ex Post Facto* Clause by:

15        mak[ing] an action, done before the passing of the law, and which was innocent
        when done, criminal. . . . aggravat[ing] a crime, or mak[ing] it greater than it was,
16        when committed. . . . chang[ing] the punishment, and inflict[ing] greater
        punishment, than the law annexed to the crime, when committed. . . . [or]
17        alter[ing] the legal rules of evidence, and receiv[ing] less, or different, testimony,
        than the law required at the time of the commission of the offence, in order to
18        convict the offender.

19  *Calder v. Bull*, 3 U.S. 386, 390 (1798). However, because "non-statutory aggravating factors and

20  mitigating factors are weighed by the jury to make the individualized determination to impose

21  the death sentence upon a defendant who has already been found eligible. . . . [t]hey do not

22  increase the possible punishment or alter the elements of the offense." *United States v. Higgs*,

23

24  _____

25        [2] However, non-statutory aggravating factors do not necessarily constitute "criminal
    conduct." For instance, victim impact evidence is admissible during the penalty phase of a death
26  penalty prosecution. *See, e.g.*, *Mitchell*, 502 F.3d at 996 (extensive victim impact evidence in
    death penalty prosecution "was quite properly before the jury").

353 F.3d 281, 322 (4th Cir. 2003). Here, even if the government were unable to submit the non-statutory aggravating factors to the jury, the jury could theoretically still find Defendant eligible for the death penalty and sentence him to death, with reference to the statutory aggravating factors alone. Accordingly, the government's selection of non-statutory aggravating factors to submit to the jury does not violate the *Ex Post Facto* clause because it neither criminalizes new conduct nor exposes Defendant to the risk of a sentence higher than that to which he was already exposed. *See Dobbert v. Florida*, 432 U.S. 282, 293–94 (1977) (where new statute "simply altered the methods employed in determining whether the death penalty was to be imposed," no violation of *Ex Post Facto* clause); *Gentry*, 705 F.3d at 909–10 (use of victim impact evidence during penalty phase of capital prosecution did not violate *Ex Post Facto* clause); *United States v. Allen*, 247 F.3d 741, 759 (8th Cir. 2001) (allowance of non-statutory aggravating factors did not violate the constitutional prohibition against *Ex Post Facto* laws), vacated on other grounds 536 U.S. 953; *United States v. Nguyen*, 928 F. Supp. 1525, 1538 (D. Kan. 1996) ("[T]he use of non-statutory aggravating factors does not violate the *Ex Post Facto* clause.").

## I.   Whether § 3591 is Inconsistent With § 3592, Preventing the Use of Non-Statutory Aggravating Factors

Under the FDPA, a defendant "shall be sentenced to death if, after consideration of the factors set forth in section 3592 . . . it is determined that imposition of a sentence of death is justified." 18 U.S.C. § 3591(a). There are sixteen statutory aggravating factors set forth in § 3592, and "[t]he jury, or if there is no jury, the court, may consider whether any other aggravating factor for which notice has been given exists." 18 U.S.C. § 3592(c). Defendant argues that the non-statutory aggravating factors are not "set forth" in § 3592, and accordingly may not be used.[3]

---

[3] While Defendant raised this argument in one of his motions to find the death penalty unconstitutional, this does not appear to be a constitutional argument. Accordingly, the Court will construe this argument as an addendum to his motion to strike the non-statutory aggravating factors.

"A statute should be construed, if possible, in such a way that all of its provisions can be given effect, and so that no part of the statute is rendered inoperative or superfluous." *Nguyen*, 928 F. Supp. at 1536. Defendant's "strained and hyper-literal reading of § 3591(a) would render large portions of § 3592 inoperative," including the "'any other' *mitigating* factors provision." *Id.* (citing 3592(a)(8)). Moreover, "[t]here is nothing internally contradictory or ambiguous about a statute referring to something 'set forth' in a 'catch-all provision.'" *Id. See also United States v. Llera Plaza*, 179 F. Supp. 2d 444, 459 (E.D. Penn. 2001) ("To construe § 3591(a) so narrowly as to nullify the catch-all sentence of §3592(c) authorizing the use of non-statutory aggravating factors would violate 'the longstanding canon of statutory construction that terms in a statute should not be construed so as to render any provision . . . superfluous.'" (quoting *Beck v. Prupis*, 529 U.S. 494, 506 (2000))); *United States v. Le*, 327 F. Supp. 2d 601, 614 (E.D. Va. 2004) ("[A] better, more sensible reading of § 3592(c) is that any non-statutory aggravating factors for which notice has been given are considered to be effectively set forth in § 3591(a)."); *United States v. Williams*, Case No. CR08-0070-YK, 2013 WL 1335599, at *20 (M.D. Penn. Mar. 29, 2013) (rejecting argument for similar reasons). The Court finds the reasoning in those cases persuasive and hereby adopts it, refusing to find the use of non-statutory aggravating factors statutorily foreclosed.

## J.      Imposition of Death Penalty Without Proportionality Review

"[P]roportionality review refers to the notion that imposition of the death penalty would be 'unacceptable in a particular case because [it is] disproportionate to the punishment imposed on others convicted of the same crime.'" *Mitchell* 502 F.3d at 980 (quoting *Pulley v. Harris*, 465 U.S. 37, 43 (1984)). "*Pulley* squarely rejected the claim that the Constitution requires proportionality review in death sentences." *Id.*

## K.      Death Penalty and Cruel and Unusual Punishment

Defendant argues that the death penalty constitutes cruel and unusual punishment under all circumstances, and must be found unconstitutional. However, a contention that capital

1  punishment "is incompatible with society's values or otherwise categorically violates the Eighth

2  Amendment" is unavailing. *Id.* at 982. Similarly, Defendant's argument that the death penalty

3  has in the past, and will in the future, lead to the execution of an innocent person "is one the

4  Supreme Court has long been aware of," but it has nonetheless declined to find capital

5  punishment unconstitutional. *Id.* at 983. Defendant's other arguments, that the process by which

6  individuals are selected for capital prosecution vests too much discretion in the prosecuting

7  attorney, that the death penalty is an "intellectually dishonest congressional response to the

8  public's frustration with violent crime," and that the error rate in capital cases is unacceptably

9  high, (Dkt. No. 115, at 49), are similarly unavailing where the Supreme Court has repeatedly

10  upheld the death penalty. *See, e.g.*, *Gregg v. Georgia*, 428 U.S. 153, 187 (1976); *Zant v.

11  Stephens*, 462 U.S. 862, 891 (1983); *McCleskey v. Kemp*, 481 U.S. 279, 296–97 (1987); *Kansas

12  v. Marsh*, 548 U.S. 163, 181 (2006).

13          **L.      Lethal Injection and Cruel and Unusual Punishment**

14          Defendant argues that lethal injection constitutes cruel and unusual punishment.

15  However, the Supreme Court has held that lethal injection is not categorically barred by the

16  Eighth Amendment. *See Baze v. Rees*, 553 U.S. 35, 47 (2008) (holding that Kentucky's lethal

17  injection protocol satisfies the Eighth Amendment). In any case, "challenges to the execution of

18  a federal sentence are properly brought under 28 U.S.C. § 2241," and raising it in a motion

19  during the underlying criminal prosecution is improper. *United States v. Little*, 392 F.3d 671, 679

20  (4th Cir. 2004). Finally, as the government notes, Defendant has not been sentenced to death, or

21  even convicted. Accordingly, this challenge is premature. *See United States v. Green*, Case No.

22  CR06-0019-TBR, 2008 WL 4000873, at *2–*3 (W.D. Ken. Aug. 26, 2008) (Defendant's motion

23  to find lethal injection unconstitutional not appropriate at this time, where Defendant had not

24  been convicted and sentenced to death); *United States v. Caro*, Case No. CR06-0001-JPJ, 2006

25  WL 1594185, at *4 (W.D. Va. June 2, 2006) (challenge to constitutionality of lethal injection

26  during pretrial proceedings not ripe, and accordingly not properly raised).

1  **III.    CONCLUSION**

2          For the foregoing reasons, Defendant's motions to find the death penalty unconstitutional

3  (Dkt. Nos.114 & 115) are DENIED.

4          DATED this 18th day of February 2014.

5

6

7

8

9

10

11                                                    John C. Coughenour
                                                      UNITED STATES DISTRICT JUDGE

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26