THE HONORABLE JOHN C. COUGHENOUR

IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| UNITED STATES OF AMERICA, | CASE NO. CR12-0072-JCC-GSA |
|---|---|
| Plaintiff, | ORDER |
| v. | |
| SAMUEL STONE, | |
| Defendant. | **DEATH PENALTY CASE** |

This matter comes before the Court on Defendant's motion for a protective order. (Dkt. No. 203.) Having thoroughly considered the parties' briefing and the relevant record, the Court finds oral argument unnecessary and hereby GRANTS the motion for the reasons explained herein.

I.   **BACKGROUND**

This death penalty case arises out of the alleged murder of Michael Anita by Defendant Samuel Stone.

On December 7, 2012, Defendant filed a motion to compel the production of evidence. (Dkt. No. 34.) Relevant to this Order are Requests 66 and 67. Request 66 was for any and all writings and electronic information "relating to the assault of Stephen Jackson on or about April 24, 2003," while Request 67 was for any and all writings and electronic information "regarding the investigation and prosecution of Angelo Fuentes, Charles Anagal, and Shawn Percy" for the

1 assault of Stephen Jackson. (*Id.* at 35, ¶¶ 66–67.)

2 On May 16, 2013, the Honorable Gary Austin, United States Magistrate Judge, issued an
3 order outlining certain procedures with which the parties were expected to comply, regarding all
4 future discovery disputes. (Dkt. No. 85.) Among other requirements, Judge Austin stated that "if
5 the government represents that a document or other requested item cannot be located, is no
6 longer in existence, or has been destroyed, then it must briefly describe what efforts it has made
7 to obtain the requested information." (*Id.* at 2.) Moreover, if the government asserted a privilege,
8 it was instructed to "clearly identify the privilege and set forth reasons why the privilege
9 outweighs Defendant's right to disclosure," as well as "produce a privilege log identifying each
10 document it seeks to protect and the precise privilege asserted," and "produce the material for an
11 *in camera* inspection to the Court at the time their opposition is filed." (*Id.*) These requirements
12 echo those made in a previous order by Judge Austin posted on February 22, 2013. (Dkt. No. 57
13 at 2, ¶¶ 2–3.) The government did not object.

14 On April 29, 2013, the government represented that it would provide all information
15 responsive to Requests 66 and 67. (Dkt. No. 79 at 23.) On June 7, 2013, the government again
16 agreed to provide all information responsive to Requests 66 and 67, this time by June 14, 2013.
17 (Dkt. No. 91 at 9.) On June 28, 2013, the government stated that it would provide the FBI and
18 the BOP file related to the assault, and that it had "previously provided defense with a copy of
19 the contents of the U.S. Attorney's file pertaining to the prosecution" of the three individuals for
20 the assault. (Dkt. No. 97, at 14.) On August 27, 2013, Judge Austin declined to enter an order
21 finding that the government had unnecessarily delayed production of the documents, but ordered
22 the government to provide the documents responsive to Requests 66 and 67 by September 30,
23 2013, if it had not already done so. (Dkt. No. 106 at 15–16.) On September 30, 2013, the
24 government stated that it had provided the defendant with the FBI file pertaining to the Stephen
25 Jackson assault, and it had previously provided a "copy of the pleadings from the U.S.
26 Attorney's Office's file pertaining to the prosecution" of three individuals for the assault. (Dkt.

No. 119 at 8.) In that document, the government did not provide any statement or affidavit regarding the fate of any other information or documents about the assault; nor did the government say anything about its efforts to discover any other documents. The government did not assert any privilege, or file a privilege log.

Defendant objected, stating that he had never received the BOP SIS file, despite promises from the government to turn it over, and that he only received the pleadings from the government's file related to the assault. (Dkt. No. 152 at 9–10.) On December 6, 2013, the government responded, stating, for the first time, that it believed the BOP SIS file to have been destroyed, (Dkt. No. 153 at 6), and asserting privilege, for the first time, over the entirety of the non-pleading content of the government file related to the assault.[1] (*Id.* at 7.) However, the government also asserted that Counsel for Defendant Stone may have already been provided some of the contested documents, as they may have constituted discoverable material in *United States v. Sablan*, another death penalty prosecution, where Defense Counsel represents Mr. Sablan. (Dkt. No. 153 at 6 n.2).

The Court held a hearing on January 8, 2014. During the hearing, the Court expressed concern regarding the fate of the SIS file. (*See* Dkt. No. 189 at 7.) The Court noted that it was unclear whether Defense Counsel had actual access to the relevant documents through the discovery provided in the *Sablan* case. (*Id.*) Defense Counsel pointed out that a protective order had been issued in that case, preventing him from discussing those documents. (*Id.*) After the Court restated its question, Defense Counsel said that some documents relevant to Requests 66 and 67 may have been provided in the *Sablan* case, but not all of them. (*Id.* at 7–8.) Accordingly, the Court urged Defense Counsel to ask Judge Pro, the Judge in the *Sablan* case, for permission to use the documents in this case. (*Id.* at 8.)

Defense Counsel asked Judge Pro to amend the protective order in that case, so as to give

---

[1] The government did not, however, file the documents and a privilege log with the Court, as directed by Judge Austin's order.

1  him the same access to documents as Mr. Sablan's defense team. (Dkt. No. 203, Ex. A.) This
2  constitutes broader access than was discussed during the hearing on January 8, 2013. The
3  government filed a statement of non-opposition, (Dkt. No. 203, Ex. C), and Judge Pro entered
4  Defense Counsel's proposed protective order. (Dkt. No. 203, Ex. D.) That protective order
5  requires that counsel for Mr. Stone seek a protective order in this case that protects the
6  information to the same degree as the original *Sablan* protective order. (Dkt. No. 2013, Ex. D.)
7     Accordingly, Defendant now asks for a protective order that will satisfy the requirements
8  of the *Sablan* protective order. The government opposed the motion, arguing that Defendant is
9  circumventing the discovery process. (Dkt. No. 210.) Defendant filed a reply. (Dkt. No. 219.)

10 **II.   DISCUSSION**

11    "[A] protective order prevents a party from disseminating . . . information [that was]
12 obtained through the use of the discovery process." *Seattle Times Co. v. Rhinehart*, 467 U.S. 20,
13 34 (1984). Generally, "a party may request a protective order if he or she has just cause for
14 objecting to a discovery request." *Taylor v. Illinois*, 484 U.S. 400, 415 n.20 (1988). In
15 determining whether a protective order is appropriate, "the court will take into account such
16 considerations as the safety of witnesses and others, a particular danger of perjury or witness
17 intimidation, the protection of information vital to national security, and the protection of
18 business enterprises from economic reprisals." 2 Charles Alan Wright, et al., Federal Practice &
19 Procedure Criminal § 262 (4th ed. 2013) (footnotes omitted). Rule 16(a) states that "at the
20 defendant's request, the government must" give the defendant certain information. Fed. R. Crim.
21 P. 16(a)(1)(A)–(E). However, it does not prevent a defendant from using or accessing
22 information already in his possession.
23    Here, the government objects to the entry of a protective order not because it believes that
24 the information should be public, but because the protective order will protect information
25 beyond that which the government was obliged to provide to Defendant during discovery in this
26 case. (Dkt. No. 210 at 7–8.) Indeed, the government explicitly states that it objects to Defendant

1  being "entitled to discover" the relevant information. (*Id.*)

2  However, the discovery rules govern the information that the government is obliged to
3  give Defendant, while a protective order concerns certain restrictions on what a party may do
4  with the information once it is handed over. Here, Defense Counsel already has the information,
5  and has effectively possessed to use in this case from the time Judge Pro allowed the *Sablan*
6  protective order to be modified. Accordingly, Rule 16 issues of materiality are irrelevant—the
7  Court is not ordering the *government* to collect information and turn it over to Defendant; the
8  Court is merely determining whether the information should be accessible to the public. As both
9  the government and the Court have noted in the past, during discovery the Court may weigh the
10 burden on the government of producing certain information, in considering whether the
11 government should be obliged to turn it over. *See, e.g.*, *United States v. Mandel*, 914 F.2d 1215,
12 1219 (9th Cir. 1990) (if the government states that production would be unduly burdensome,
13 district court should "consider the government interests asserted in light of the materiality
14 shown"). However, those considerations are not relevant where Defendant already has the
15 information. In any case, the government does not cite to any legal authority supporting its
16 position.

17 The government's concerns may have been better raised at the hearing in front of Judge
18 Pro. As Judge Pro has authorized that certain information possessed by Defense Counsel in the
19 *Sablan* case may be used in this case, provided the Court protects the information to the same
20 degree that it is protected there, and as the government did not object at that time, it is not clear
21 that the Court even has the authority to restrict Defense Counsel's use of the documents beyond
22 the restrictions set by Judge Pro. The government does not cite any rule or legal authority that
23 allows the Court to do so. However, assuming the Court does have the authority to restrict the
24 Defendant's access to and use of the information in this case, the government does not point to
25 any prejudice, or articulate any harm that will accrue if Defense Counsel is allowed the use of the
26 relevant information. The government's concern regarding its inability to look through the

voluminous discovery is misplaced, as the government need only outline categories of documents, not individual documents, that it believes should not be provided to Defendant Stone himself, as opposed to his attorneys. However, the Court will give the government additional time to lodge objections to categories of documents to which it objects giving Defendant Stone personal access.

The government also states—though in its motion papers, rather than a declaration under oath, and with no supporting evidence—that it has finally provided the BOP SIS file to Defendant,[2] as that file was apparently in the U.S. Attorney's Office discovery file[3] related to the prosecution of Angelo Fuentes for the Stephen Jackson assault all along. (Dkt. No. 210 at 6.) Accordingly, the government argues that "grounds for modifying the protective order in *Sablan/Guerrero* no longer exist[]." (Dkt. No. 210 at 6.) However, Defendant would not have been obliged to engage in procedural gymnastics with this Court and Judge Pro if the government had produced the documents months ago, as it promised and as the Court ordered. Moreover, it is not clear to the Court that the documents handed over to Defendant constitute the complete BOP SIS file, and the Court will not prevent Defendant from accessing the *Sablan*

---

[2] Defendant argues that the documents handed over may not constitute the complete BOP SIS file.

[3] The government's characterization of the contents of the U.S. Attorney's file related to the prosecution of Angelo Fuentes for the assault of Stephen Jackson has changed several times over the past eight months. On June 28, 2013, the government said that it "provided defense with a copy of the contents of the U.S. Attorney's file pertaining to the prosecution of Angelo Fuentes, Charles Anagal, and Shawn Percy for the assault on Stephen Jackson," (Dkt. No. 97 at 14). On December 6, 2013, the government modified its assertions, stating that the US Attorney's file related to the prosecution of Angelo Fuentes for that assault contained only "the pleadings produced in discovery to defendant"; "copies of the Pre-Sentence Investigation Reports of the defendants, which are sealed"; and "internal correspondence, which is privileged and confidential," (Dkt. No. 153 at 7), which suggested that the government had only provided a copy of the pleadings to Defendant, rather than a complete copy of the contents of the file. No mention was made of the BOP SIS file in either filing. Apparently, an additional file related to the prosecution had been overlooked until four days after the hearing where the Court articulated concern regarding the fate of the file and certain behavior by the government in this case. (Dkt. No. 210 at 6.)

documents in case it is not. The government has repeatedly made assertions in filings with this Court, regarding its discovery compliance and the contents of the U.S. Attorney's file, that have turned out to be incorrect. The Court is not stating that the government purposefully misled the Court. However, assuming its previous statements regarding the U.S. Attorney's File were inadvertently incorrect, it is nonetheless difficult to trust the government's assertions in its filings, at least where the government provides no evidence that it has given the complete BOP SIS file to Defendant, and articulates no harm if the Court grants Defendant's motion.

**III.   CONCLUSION**

For the foregoing reasons, Defendant's motion for a protective order (Dkt. No. 203) is GRANTED. The protective order—modified to give the government additional time to notify Defense Counsel of categories of information that it objects to being possessed by Mr. Stone himself—will be forthcoming.

DATED this 25th day of February 2014.

John C. Coughenour
UNITED STATES DISTRICT JUDGE