THE HONORABLE JOHN C. COUGHENOUR

# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>    Plaintiff,<br><br>    v.<br><br>SAMUEL STONE,<br><br>    Defendant. | CASE NO. CR12-0072-JCC-GSA<br><br>ORDER<br><br>**DEATH PENALTY CASE** |

This matter comes before the Court on Defendant's second motion to compel, as amended. (Dkt. Nos. 176 & 244). Having thoroughly considered the parties' briefing and the relevant record, the Court finds oral argument unnecessary and hereby GRANTS IN PART and DENIES IN PART the motion for the reasons explained herein.

I.  **BACKGROUND**

This death penalty prosecution arises out of the alleged murder of Michael Anita by Defendant Samuel Stone. Defendant has submitted a number of discovery requests to the government. While the parties have commendably managed to resolve most of the remaining discovery disputes on their own, there are six outstanding issues.[1]

---

[1] Judge Coughenour is deciding this motion because he is concerned that any objections period after a ruling on the pending discovery issues by Judge Austin will affect the currently scheduled June 2, 2014 hearing.

ORDER
PAGE - 1

Mr. Anita was placed in a cell in the Special Housing Unit ("SHU") with Defendant in April 2003, after Mr. Anita—and, allegedly, an inmate named Angelo Fuentes—participated in an assault on another inmate, named Stephen Jackson, a leader of a rival faction of Native American inmates. Defendant, Mr. Anita, and Mr. Fuentes were all Native Americans. On July 15, 2003, Angelo Fuentes was placed in the same cell as Mr. Anita and Defendant. On July 30, 2003, Mr. Anita was killed, and his body discovered. Defendant took sole responsibility for the killing, while Mr. Fuentes asserted his Fifth Amendment privilege and declined to be interviewed.

Defendant argues[2] that a number of the contested requests are relevant to his theory regarding a motive for the killing of Michael Anita, which implicates Mr. Anita's other cellmate, Angelo Fuentes, who was never charged in this case. This argument applies both to the guilt phase—as Defendant may argue that the actual killer was Mr. Fuentes, and not Defendant—and the penalty phase, as even if Defendant is found by the jury to have participated in the murder, he may be able to argue that he is the less culpable party. Defendant asserts that three documents, discovered relatively recently, support his theory that prison politics were at the root of the killing. First, the "Lepe Memo," produced by the government in July 2013, states that an inmate told a correctional officer that Mr. Fuentes told the inmate that he—and not Defendant—stabbed Mr. Anita and attempted to cut a tattoo from Mr. Anita's neck. Second, the "Luther Memo," produced by the government in January 2014, discusses an assault on an inmate named Sidney

---

[2] While a number of documents related to these requests were filed under seal, the government referred to, and quoted, sealed information in Docket Number 205. After that document was filed, both parties repeatedly quoted and discussed the contested discovery requests. Similarly, the government referenced and described Defense Exhibit H to Docket Number 222, originally filed under seal, in its sur-reply. (Dkt. No. 234, at 9.) Because the documents were sealed primarily for the benefit of the government, the Court will assume that the government does not object to the information being discussed publicly. Accordingly, this Order will not be filed under seal, and will quote from non-sealed documents. To the extent one of the parties desires this Order, or any of the previous unsealed filings on these discovery issues, to be sealed, it should file a motion making such a request.

ORDER
PAGE - 2

Sinyella, where Angelo Fuentes was allegedly present at the assault, although another inmate took responsibility for the beating. Finally, the "Cole Memo," discovered by Defense Counsel but never directly handed over by the government, describes the history of Native American incarceratory politics at Atwater at the time of the Stephen Jackson assault and Mr. Anita's subsequent murder. (Dkt. No. 244 at 5.)

## II. DISCUSSION

The principles governing discovery in this case have already been clearly laid out in this case, and the Court adopts Judge Austin's explanation of the legal landscape. (*See* Dkt. No. 106 at 3–8.) In brief, the government must turn over to Defendant all evidence that is "material to the preparation of the defendant's defense." Fed. R. Crim P. 16(a)(1)(E). Defendant must make a prima facie showing of materiality before he is entitled to obtain the materials he requested. In a death penalty case, the government must turn over not only evidence and information that is material to the defendant's guilt or innocence, but also evidence and information that is material to Defendant's mitigation case.

### A. Request 200: The Complete Angelo Fuentes File

Defendant's Request 200 is put forward as follows:

> Under an attorneys' eyes only protective order, you have provided us with a mostly unredacted copy of the BOP's Central File for Angelo Fuentes. The only redactions are for the federal pre-sentence investigation report. The file produced, however, contains no materials dated after about July 2005. We request that you provide us with an updated unredacted Central File for Mr. Fuentes pursuant to the same protective order and with the understanding that the pre-sentence investigation report information will be the only redactions. If there are other materials within the file that you believe require redaction, where it is not obvious (such as "social security number:" followed by a redaction), we request that you include information about what is being redacted and the reason for the redaction. Providing the reason for redactions may decrease the need for further litigation.

(*See* Dkt. No. 205 at 6.) The government argues that no documents in Mr. Fuentes' file after 2005 will show that he was involved in violent incidents. (Dkt. Nos. 205 at 6, 234 at 2–6.) Defendant argues that, because his theory of the case relates to Mr. Fuentes' involvement in Native American incarceratory politics, the requested materials may support Defendant's

1  argument either that Mr. Fuentes alone was involved in the killing, or that he was the primary
2  force behind it but has not been prosecuted. (Dkt. No. 244 at 5–6.)
3        The Court GRANTS this request and ORDERS that the government turn over the file of
4  Mr. Fuentes, as specified.

5        **B.**      **Request 204: List of Violent Incidents Involving Native American Inmates**

6        Defendant's Request 204 is put forward as follows:

> Upon request, the government has provided Bates 6672-6679 which is a list of 100 and 200-level incidents at Atwater from its opening until April 16, 2004. The document indicates at the bottom of the page that twenty of those incidents are coded with an "I" for Native American involvement. We request that you provide any and all documents or electronically stored information, reports, writings or communications relating in any way to those twenty "I" incidents. If you claim that those files were destroyed in the March 2012 destruction of files from Atwater, please advise that this is the case, and provide all information from the electronic files of DHOs which we understand were not destroyed. In addition, please review all SENTRY and other computer files and Central Files of all inmates involved in any of those 20 incidents to obtain information about those incidents.

14  (*See* Dkt. No. 205 at 9.) The government clarified that a total of twenty Native American inmates
15  were involved, but there were a total of sixty-six incidents, (*id.*), of which Defendant was
16  responsible for eighteen. (Dkt. No. 234 at 6.) Defendant revised his request, so that it is limited
17  to the forty eight incidents in which he was not involved. (Dkt. No. 244 at 7.)
18        The government argues that none of those incidents are related to the murder charged in
19  this case, and that all information about the various assaults in which Stone, Anita, or Fuentes
20  were involved has been provided. Defendant points out that many of those incidents may involve
21  the Native American politics of the facilities where Mr. Anita, Mr. Fuentes, and Defendant were
22  incarcerated. Moreover, since information about each incident appears to be readily accessible—
23  the government easily determined that Defendant was involved in eighteen of the sixty-six
24  incidents—recovering the documents should not be unduly burdensome.
25        Accordingly, the Court GRANTS this request, and ORDERS that the government turn
26  over the requested information.

**C. Request 206: SIS/SIA Documents Referring to Michael Anita, Angelo Fuentes, Steven Jackson, Sidney Sinyella, Charles Anagal, Shawn Percy, or Samuel Stone.**

Defendant's Request 206 is put forward as follows:

> We request any and all documents or electronically stored information, reports, writings or communications written or maintained by any past or present member of the SIS/SIA referring to Michael Anita, Angelo Fuentes, Steven Jackson, Sidney Sinyella, Charles Anagal, Shawn Percy, or Samuel Stone from any BOP institution.

(Dkt. No. 205 at 10.) The government takes the position that those documents which have not already been provided are not material because they are not directly related to the killing of Mr. Anita. Defendant argues that, to the extent the individuals were involved in incarceratory politics with Mr. Fuentes, the documents may shed light on the motive for Mr. Anita's murder.

The Court GRANTS IN PART this request, and ORDERS the government to turn over information responsive to this request that was created or modified between the date USP Atwater was opened, and Defendant's indictment.

**D. Request 207: Information Regarding the Warrior Society**

Defendant's Request 207 is put forward as follows:

> We request any and all documents or electronically stored information, reports, writings or communications written or maintained by any past or present member of the SIS/SIA at any institution, or the Sacramento gang unit of the BOP, referring to the Warrior Society, or any Native American issues that in any way concerns the Warrior Society, at Atwater, or that is applicable to the BOP system-wide, that concerns the years 2002 through the date of the indictment of Defendant.

(Dkt. No. 205 at 10.) The government argues that information already provided to Defendant demonstrates that the Warrior Society "is a group willing to harm other inmates . . . and constitutes a threat to institutional security." (Dkt. No. 234 at 9.) It states that "any and all information regarding the Warrior Society maintained by SIS at any BOP institution, would demonstrate this same point," and thus is duplicative as well as irrelevant and immaterial. (*Id.*) The government also argues that it would be unduly burdensome. However, information about the Warrior Society may be relevant to show its internal and external politics, as well as the

circumstances in which violence is permitted within that society, and the symbology of Warrior Society tattoos. (*See* Dkt. No. 244 at 2.)

The Court hereby GRANTS this motion. The government is ORDERED to turn over the information regarding the Warrior Society as specified in the request.

### E.  Request 208: Central File of Inmate Witnesses

Defense Request 208 is put forward as follows:

> At the time you are required to produce *Brady/Giglio* material, we request the entire Central File for any inmate government witnesses, including but not limited to Scott Rollins.

(Dkt. No. 205 at 12.)

The Court hereby DENIES this motion. Defendant has already requested *Brady*/*Giglio* materials, and the prosecution will be obliged to turn it over, as previously ordered by the Court. However, the Court notes that the Supreme Court has advised that the government should "err[] on the side of disclosure." *United States v. Bagley*, 473 U.S. 667, 699 (1985).

### F.  Request 218: Statistical Information

Defendant's Request 218 was originally put forward as follows:

> The government has noticed the defense that it will seek to prove that Defendant "poses a continuing danger to others in that he is likely to commit additional acts of violence in any setting against inmates, prison guards and other officials at correctional institutions where he is or will be incarcerated, as evidenced by his past acts of violence and pattern of violence." Govt's Notice of Intent (Doc. 3). In previous cases where the government has noticed the non-statutory aggravating factor of "future dangerousness" the government has presented statistical evidence regarding the alleged propensity of inmates serving life sentences without the possibility of release in the BOP to commit further harm to others, including both inmates and staff. In those cases the government relied upon BOP-generated statistics to support a claim that an inmate who kills in prison is a higher danger to commit future violence (and therefore, is a "future danger") while in prison than is an inmate who has not been convicted of a homicide in prison. If the government intends to argue on the basis of statistics, we request all materials that the government has access to in order to prepare a defense to the alleged aggravating circumstance.

(Dkt. No. 205 at 12.) In his most recent reply papers, Defendant narrows his request to the statistical data that the government intends to use to cross examine Defendant's experts who will

testify concerning Defendant's lack of future dangerousness and the possibility of safely housing him. The government has not had the chance to respond to Defendant's narrowed request. Accordingly, the Court gives the government ten days from the date of this order to file a statement regarding whether or not it will rely on any statistical data under any circumstances, including to cross examine or rebut Defendant's future dangerousness experts, or alternatively to make an argument regarding the lack of materiality of Defendant's narrowed request.

### III.  CONCLUSION

For the foregoing reasons, Defendant's second motion to compel production as amended (Dkt. Nos. 176 & 244) is GRANTED IN PART and DENIED IN PART, as explained above. The government is given an additional ten days to respond to Defendant's modified request 218. To the extent necessary, all documents produced will be subject to the standard protective order.

DATED this 8th day of April 2014.

John C. Coughenour
UNITED STATES DISTRICT JUDGE